**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ADVANCED GROUND INFORMATION SYSTEMS, INC., | CIVIL ACTION NO. 9:14-cv-80651-DMM |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| LIFE360, INC., | |
| Defendant. | |

**DEFENDANT LIFE360, INC.'S MOTIONS IN *LIMINE***

# TABLE OF CONTENTS

**MOTION IN LIMINE NO. 1: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OF LIFE360'S RECENT FUNDRAISING AMOUNTS OR ISOLATED COMPANY EXPENDITURES** ...................................... 1

**MOTION IN LIMINE NO. 2: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OF ANY STATEMENTS MADE BY LIFE360 OR ITS EMPLOYEES ABOUT AGIS OR ITS ATTORNEYS, OR DIRECTLY TO AGIS OR ITS ATTORNEYS** ............................................................................................. 4

**MOTION IN LIMINE NO. 3: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE THE TESTIMONY OF MELISSA BENNIS** ....................................... 7

**MOTION IN LIMINE NO. 4: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE PERTAINING TO AGIS'S ALLEGED "CIVILIAN PRODUCT"** ................................................................................................................... 8

**MOTION IN LIMINE NO. 5: AGIS SHOULD NOT BE PERMITTED TO ARGUE INFRINGEMENT THEORIES NOT DISCLOSED IN ITS INFRINGEMENT CONTENTIONS** .............................................................................................................. 8

**MOTION IN LIMINE NO. 6: AGIS SHOULD NOT BE PERMITTED TO ELICIT TESTIMONY FROM DR. CARBONELL BEYOND THE SCOPE OF HIS EXPERT REPORT** ..................................................................................................................... 10

Defendant Life360, Inc. ("Life360") moves to preclude plaintiff Advanced Ground Information Systems, Inc. ("AGIS") from presenting improper evidence and argument at trial, so that trial properly encompasses only relevant, non-prejudicial and properly and timely disclosed evidence and argument, as follows.

**MOTION IN LIMINE NO. 1: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OF LIFE360'S RECENT FUNDRAISING AMOUNTS OR ISOLATED COMPANY EXPENDITURES**

Based on AGIS's identification of trial exhibits and deposition designations, Life360 has reason to believe that AGIS intends to introduce evidence about Life360's fundraising efforts, including a recently-completed Series C round in which Life360 raised $50 million, largely by forging partnerships with ADT and BMW. Life360 further believes that AGIS intends to introduce evidence and elicit testimony concerning isolated company expenditures, including a luxury car and a robot that were referenced in an email between Life360 employees that appears on AGIS's exhibit list (PTX-246). The results of Life360's fundraising efforts have no reasonable bearing on any issue in this case, and such evidence should be excluded as being unfairly prejudicial, confusing, and potentially misleading. Fed. R. Evid. 403; *see also Inventio AG v. Thyssenkrupp Elevator Corp.*, No. CV 08-874-RGA, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) (precluding expert from discussing the overall size and revenue of the defendant when such information was not actually used in reaching damages conclusion). The same is true of Life360's specific company expenditures.[1] Life360's fundraising and company expenditures have no logical connection to AGIS's damages position or any other issue in this case, and introduction of such evidence would seriously confuse and mislead the jury into thinking that the

---

[1] Life360 is not seeking to exclude evidence of the total **amount** of company expenditures or to any way limit the information reported in company financials.

1

amount of capital commitment Life360 has raised, or how Life360 spends its money, somehow justifies a finding of liability or a higher damages award.

The only conceivable issue for which this information could be relevant is damages. AGIS's position regarding damages has been explained by Ms. Melissa Bennis, AGIS's damages expert. Ms. Bennis's reasonable royalty calculation applies an arbitrary dollar amount to each purported monthly active user ("MAU") of the Life360 app. *See* DE 99 at 2-5. While Ms. Bennis briefly mentions Life360's fundraising efforts in her expert report, including its recently completed Series C round, neither the existence of this fundraising nor the actual amount raised play any discernable role in her determination of a royalty rate or royalty base. Similarly, while Ms. Bennis quotes from a deposition passage in which a Life360 employee was asked to read an email in which a different Life360 employee suggests money is spent on "partially stupid stuff,"[2] the specifics of Life360's expenditures does not play any discernable role in Ms. Bennis' ultimate damage calculation. Nor should it. There is no evidence that Life360's fundraising—completed before this case even began—has any relation to the relative value of the patents involved in this lawsuit or to any other issue this case. Similarly, isolated instances of Life360 expenditures are not at all probative of an appropriate royalty for the patents at issue.

Allowing AGIS to introduce documents or elicit testimony concerning Life360's fundraising and company expenditures serves no legitimate purpose. It is thus irrelevant and should be excluded under FRE 402. Further, allowing the jury to learn that Life360 has recently raised $50 million in Series C funding is unduly prejudicial to Life360. For one, this information could improperly suggest to the jury that Life360's recent success justifies a larger damages award, even though the actual damages claim is not based on this fundraising. Second, it could

---

[2] This email appears on AGIS's exhibit list as PTX-246.

improperly suggest to the jury that Life360 has the "ability to pay," and thus it should pay in this instance. Third, without understanding the details of the fundraising, such as how the deals were structured, statements that Life360 has raised $50 million would unfairly (and incorrectly) suggest that Life360 has large sums of cash on hand, even though the terms of the funding are far more complicated. Delving into these details to correct any misconceptions would be time consuming and confusing. Finally, there is only a loose (if any) connection between the Life360 Family Locator app accused of infringement in this case and Life360's Series C funding, which was largely driven by ADT and BMW, for each of which Life360 agreed to help develop new products.[3] These new products are not at issue in this case, and introducing evidence of funding that is tied to their development would be misleading and unfairly prejudicial. With respect to Life360's specific company expenditures, AGIS should not be permitted to use isolated examples of company expenditures in an attempt to portray Life360 as fiscally irresponsible or suggest to the jury that it would be more appropriate for Life360 to use its money to pay AGIS a royalty. These legitimate concerns of prejudice far outweigh any probative value of Life360's fundraising efforts or company expenditures.

Accordingly, Life360 respectfully requests that the Court exclude any mention of the amount Life360 has raised through capital investment and the specifics of Life360's company expenditures beyond that which is set forth in its financial statements.

---

[3] *See, e.g.,* http://www.bmw.com/com/en/insights/corporation/bmwi_ventures/index.html and http://investors.adt.com/phoenix.zhtml?c=251389&p=irol-newsArticle&id=1930216, copies of which appear on AGIS's exhibit list as PTX-152 and PTX-153, respectively. Several other exhibits include similar information.

**MOTION IN LIMINE NO. 2: AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OF ANY STATEMENTS MADE BY LIFE360 OR ITS EMPLOYEES ABOUT AGIS OR ITS ATTORNEYS, OR DIRECTLY TO AGIS OR ITS ATTORNEYS**

As discussed in AGIS's Motion to Compel Discover from Life360, Inc., Chris Hulls and Ben Erez (DE 78), there have been a series of emails, online news articles, blogs, websites, and social media communications in which Life360's co-founder and CEO, Chris Hulls, has voiced his disapproval of being the subject of this lawsuit and his disfavor for AGIS and its attorneys. Virtually all of these activities post-date the filing of the complaint, and all of them occurred after Life360 was first notified of its purported infringement. AGIS has identified on its trial exhibit list approximately 100 exhibits related to statements made about this case, and more specifically about AGIS, its counsel, and the communication referenced in the complaint (DE 1 at ¶ 11), including news articles (e.g., PTX-318, 328, 409, 410, 414, 425), social media posts (e.g., PTX-354 to 361, 363, 434 to 438), websites (e.g., PTX-324, 325, 326, 334, 407, 412, 413), internal Life360 emails (e.g., PTX-520, 521, 531), emails from Life360's founders to AGIS's founder (e.g., PTX-327, 411, 545), emails from Life360's founders to AGIS's trial counsel (e.g., PTX-322, 323, 362, 408, 549, 551), emails to third parties (e.g., PTX-522 to 527, 539 to 544), and a copy of the complaint from a completely separate lawsuit filed by Life360 against AGIS (PTX-433). None of this is of any particular relevance to any issue in this case, and Life360 believes that AGIS intends to use these exhibits to make this case more about the character of Life360 and/or its employees than about whether Life360 infringes AGIS's patents. This evidence should be excluded under FRE 402, 403, and/or 404. Additionally, communications between Life360 and AGIS or between Life360 and AGIS's counsel should be excluded under FRE 408.

AGIS has already attempted to make a case for why this information is relevant. In moving to compel information about "any correspondence, communications, or statements made

by, to or from Life360, or any of its employees or agents, to any third party relating to this litigation," (DE 78 at 2), AGIS claimed that these communications were relevant since Life360's "state of mind concerning AGIS's patents" shows that Life360 has the requisite intent to induce infringement of the patents. DE 88 at 1. However, inducement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2062 (2011). Accordingly, the specific intent, and state of mind, that is relevant is the affirmative intent to cause infringement. *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The exhibits and testimony AGIS intends to proffer to the jury related to statements made about AGIS and/or its attorneys, all of which post-date the initial letter from AGIS to Life360 concerning the patents, do not tend to show that Life360 intended to cause infringement of AGIS's patents. At most, they show that Life360 was aware of the patent and the claims made against it. However, Life360 has already stipulated that it was made aware of AGIS's patents on May 13, 2014. DE 108 at 4. Whether Life360 or any of its employees disapprove of being sued or dislike those involved in suing it is not at all relevant to whether or not Life360 specifically intended to cause the infringement of AGIS's patent. Similarly, whether Life360 or the media has referred to AGIS in a negative way is not relevant. *See, e.g., Digital Reg. of Texas, LLC v. Adobe Systems, Inc.*, No. 12-1971-CW, 2014 WL 4090550, *12 (N.D. Cal. Aug. 19, 2014) (precluding any use of pejorative terms to describe the patentee.)

AGIS further asserted that information about Life360's post-filing comments about the case are "pertinent to the objective standard" for willfulness. DE 88 at 1-2. But the objective standard for willfulness, as the name implies, is an objective inquiry into whether the accused infringer had reasonable non-liability positions. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). Importantly, "[t]he state of mind of the accused infringer is not

5

relevant to this objective inquiry." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Thus, the alleged "state of mind" evidence AGIS seeks to introduce is not relevant to this issue.  Further, the objective prong is a question of law for the Court, and there is therefore little need for AGIS to present evidence of it to the jury. *Bard Peripheral Vascular, Inc. v. WL. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).  Finally, the evidence AGIS seeks to introduce almost entirely relates to post-filing conduct.  As the Court has already observed, "it is unclear whether information regarding Life360's post-filing conduct is relevant to a claim for willful infringement."  DE 95 at 5.

Introduction of this evidence is unduly prejudicial to Life360.  AGIS almost certainly intends to use this evidence to portray Life360 in a negative light, or to garner emotional support for itself or its employees.  Evidence about the character of Life360, or AGIS for that matter, is not relevant to any issue, and allowing AGIS to attempt to appeal to the jury's emotions would be unduly prejudicial to Life360.  Further, introduction of this evidence will almost certainly serve as a major distraction during trial.  If this evidence is introduced, there is a very real risk that the case will become more about the character of Life360, AGIS, and AGIS's attorneys than about the merits.  Further, to the extent AGIS introduces statements made or actions taken by Mr. Hulls concerning AGIS or its attorneys, such as statements that AGIS is a "patent troll," Mr. Hulls would have to explain why, for example, he believes AGIS is a "patent troll," what a "patent troll" even is, Life360's past experience with other entities it considers "patent trolls," and why Mr. Hulls felt justified to make certain statements about AGIS's attorneys that have

been attributed to him, including comments about the relationship between AGIS and its trial attorneys.[4]

In addition, communications from Life360 directly to either AGIS or to AGIS's lawyers[5] should be excluded under FRE 408.  These communications all took place after Life360 was first notified of infringement and reflect, albeit in unconventional ways, attempts by Life360 to ultimately resolve the claim made against it.  Such evidence falls within the scope of FRE 408 and should be excluded, particularly to the extent AGIS is attempting to introduce Life360's efforts at compromise to prove that Life360 believes it is liable for infringement or that Life360 has the intent to infringe.

**MOTION IN LIMINE NO. 3:   AGIS SHOULD NOT BE PERMITTED TO INTRODUCE THE TESTIMONY OF MELISSA BENNIS**

For the reasons set forth in the pending *Daubert* Motion to Exclude the Testimony of Melissa Bennis (DE 99), Life360 maintains that Ms. Bennis' testimony is not admissible in this matter.  For these same reasons and pursuant to Federal Rules of Evidence 401, 402, 403 and 802, Ms. Bennis's testimony should not be admitted.  Ms. Bennis has failed to provide a basis for calculating her proposed royalty rates, she has made various assumptions in calculating the royalty base that are not true and are unsupported by any recognized methodology and she appears to be opining on matters wholly outside her area of technical specialty.  Her testimony is irrelevant hearsay that is misleading and unfairly prejudicial.  Accordingly, for the reasons more fully stated in the pending *Daubert* motion, which is incorporated by reference as if fully set forth herein, Life360 moves *in limine* for the exclusion of Ms. Bennis' testimony.

---

[4]  Life360 understands AGIS may be moving *in limine* to exclude some of this evidence. However, AGIS cannot cherry pick which evidence on this issue comes in and which does not.
[5]  For example, PTX-322 and PTX-323 are emails from Chris Hulls to Thomas Makin and Mark Hannemann, AGIS's trial counsel.  PTX-327 is an email from Chris Hulls to Malcolm Beyer, founder of AGIS, regarding the lawsuit.

**MOTION IN LIMINE NO. 4:  AGIS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE PERTAINING TO AGIS'S ALLEGED "CIVILIAN PRODUCT"**

It is beyond dispute that AGIS does not have a civilian product available on the market. As a result, its currently available product does not compete with Life360. Indeed, throughout this litigation, AGIS has repeatedly vaguely threatened that a civilian product "may be launching" at a variety of different times, but no product has actually launched. The "civilian product" does not exist for purposes of this litigation. However, AGIS has now identified on its proposed exhibit list for the first time in this litigation PTX-909 "AGIS's Prototype LifeRing software" and PTX-908 "AGIS's LifeRing software running on a smartphone". This information was not made a part of this case during the normal discovery period, and indeed has not been produced at this time to Life360. Rather, AGIS has identified these items as "physical exhibits". It is unclear whether PTX-909 is source code, screen shots of purported prototype software or some other item. It is unclear whether PTX-909 is the same prototype software as reflected in PTX-908, or a different version of the prototype software. To the extent these exhibits relate to the "civilian product," this information has been disclosed too late in this litigation and is wholly irrelevant to the issues that are in dispute in this litigation. Any attempt to introduce either of these exhibits should be rejected as such information is irrelevant and unfairly prejudicial pursuant to Federal Rules of Evidence 401, 402 and 403. This eleventh hour attempt to inject new information into the case should be rejected.

**MOTION IN LIMINE NO. 5:  AGIS SHOULD NOT BE PERMITTED TO ARGUE INFRINGEMENT THEORIES NOT DISCLOSED IN ITS INFRINGEMENT CONTENTIONS**

Very early on in this case, the parties entered into a Joint Scheduling Conference Report and Discovery Plan. DE 31. In doing so, AGIS agreed to provide detailed infringement contentions by July 23, 2014 (subject to amendment two weeks after a claim construction ruling), including, *inter alia*,

> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> . . .
>
> (d)   For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

DE 31 at 3.

AGIS submitted both initial infringement contentions and supplemental infringement contentions pursuant to the timeline set forth in the Joint Scheduling Conference Report and Discovery Plan. However, based on AGIS's February 18, 2015 opposition to Life360's motion for summary judgment of non-infringement (DE 109), Life360 believes AGIS intends to advance infringement theories that differ from those disclosed in its contentions. This will be detailed in Life360's forthcoming reply to AGIS's opposition, but includes at least new theories regarding who constitutes a "direct infringer" and what constitutes a "direct infringement." AGIS should not be permitted to advance any infringement theories that were never set forth or were not set forth in the level of detail required by the Joint Scheduling Report and Discovery Plan. Any such theories, or evidence related thereto, should be excluded at least for the reason that it would

be unduly prejudicial for Life360 to have to respond to infringement theories disclosed for the first time so late in the case. *See* FRE 403.

**MOTION IN LIMINE NO. 6: AGIS SHOULD NOT BE PERMITTED TO ELICIT TESTIMONY FROM DR. CARBONELL BEYOND THE SCOPE OF HIS EXPERT REPORT**

This motion is related to Motion in Limine No. 5, above. Based on AGIS's opposition to Life360's motion for summary judgment of non-infringement, Life360 has reason to believe that AGIS may attempt to elicit testimony from its infringement expert, Dr. Jaime Carbonell, that goes beyond the scope of his expert report. This includes potential testimony on theories of infringement that were not set forth or discussed in Dr. Carbonell's expert report submitted pursuant to Fed. R. Civ. P. 26(a)(2)(B). Life360 seeks an order limiting Dr. Carbonell's testimony to the scope of his expert report. *See* Fed. R. Civ. P. 26(a)(2); Fed. R. Civ. P. 37(c)(1).

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the parties have met and conferred, via telephone, on February 18, 2015 and February 19, 2015. No resolution was achieved as a result of those discussions.

s/ *Kent E. Baldauf, Jr.*
Counsel for Defendant
Life360, Inc.

<table>
<tr><td>Dated: February 19, 2015</td><td>Respectfully submitted,<br><br>s/ *Kent E. Baldauf, Jr.*<br>Kent E. Baldauf, Jr. (PA I.D. No.: 70793)<br>kbaldaufjr@webblaw.com<br>Cecilia R. Dickson (PA I.D. No.: 89348)<br>cdickson@webblaw.com<br>Bryan P. Clark (PA I.D. No.: 205708)<br>bclark@webblaw.com<br>James J. Bosco, Jr. (PA I.D. No.: 203896)<br>jbosco@webblaw.com<br>Christian D. Ehret (PA I.D. No.: 311984)<br>cehret@webblaw.com<br><br>The Webb Law Firm<br>One Gateway Center<br>420 Ft. Duquesne Blvd., Suite 1200<br>Pittsburgh, Pennsylvania<br>Telephone: (412) 471-8815<br>Facsimile: (412) 471-4049<br><br>Eric C. Christu (Fla. Bar No. 434647)<br>echristu@shutts.com<br>Daniel J. Barsky (Fla. Bar No. 0025713)<br>dbarsky@shutts.com<br>Shutts & Bowen LLP<br>1100 CityPlace Tower<br>525 Okeechobee Boulevard<br>West Palm Beach, FL 33401<br>Telephone: (661) 650-8518<br>Facsimile: (561) 822.5527<br><br>*Counsel for Defendant Life360, Inc.*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2015, I served the foregoing **DEFENDANT LIFE360, INC.'S MOTIONS IN *LIMINE*** via CM/ECF, upon the following:

Ury Fischer, Esq.
ufischer@lottfischer.com
Adam Diamond, Esq.
adiamond@lottfischer.com
Lott & Fischer, PL
355 Alhambra Circle
Suite 1100
Coral Gables, FL 33134
305-448-7089(ph/305-446-6191(fax)


Anne E. Li, Esq.
ali@kenyon.com
Mark Hannemann, Esq.
mhannemann@kenyon.com
Matthew C. Berkowitz, Esq.
mberkowitz@kenyon.com
Thomas R. Makin, Esq.
tmakin@kenyon.com
Vincent J. Rubino, III, Esq.
vrubino@kenyon.com
George E. Badenoch, Esq.
gbadenoch@kenyon.com
Corey J. Betker, Esq.
cbetker@kenyon.com
Alessandra Carcaterra, Esq.
acarcaterra@kenyon.com
Kenyon & Kenyon, LLP
One Broadway
New York, NY 10004-1007
212-425-7200 (ph) / 212-425-5288

                                                                                                                                                  *s/ Kent E. Baldauf, Jr.*
                                                                     Counsel for Defendant
                                                                     Life360, Inc.