UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80651-MIDDLEBROOKS/Brannon

ADVANCED GROUND INFORMATION
SYSTEMS, INC.,

JURY TRIAL DEMANDED

      Plaintiff,

vs

LIFE360, INC.,

      Defendant.
_____/

**PLAINTIFF ADVANCED GROUND INFORMATION SYSTEMS, INC.'S**

**MOTIONS *IN LIMINE*[1]**

---

[1] Certain portions of this motion have been redacted because they contain materials designated as confidential by Life360. AGIS has provided Life360 with the materials to be included herewith and is awaiting clearance for public filing from Life360. By agreement of the parties, AGIS will submit a full version of its motions *in limine* with exhibits once Life360 has cleared the confidential materials.

## TABLE OF CONTENTS

MIL NO. 1:   THE COURT'S INDEFINITENESS RULINGS ................................................. 1

MIL NO. 2:   UNTIMELY INDEFINITENESS ARGUMENTS ................................................ 2

MIL NO. 3:   CONTRAVENING THE COURT'S *MARKMAN* ORDER .................................. 3

MIL NO. 4:   CHALLENGES OF EXPERT WITNESSES IN OTHER CASES ........................ 4

MIL NO. 5:   DISPARAGING THE UNITED STATES PATENT AND TRADEMARK OFFICE ........................................................................................ 4

MIL NO. 6:   ENGAGEMENT OF AGIS'S COUNSEL ............................................................. 5

MIL NO. 7:   UNCORROBORATED TESTIMONY REGARDING PRIOR ART SYSTEMS ................................................................................................ 6

MIL NO. 8:   TESTIMONY FROM MR. ALEX HARO, OR FROM AN EXPERT RELYING ON DISCUSSIONS WITH MR. HARO, REGARDING SPECIFIC PORTIONS OF LIFE360'S SOURCE CODE ........................................................................................................ 8

MIL NO. 9:   TESTIMONY REGARDING CHRIS HULLS' BACKGROUND ...................... 11

MIL NO. 10:  ANY REFERENCE TO THE POSSIBILITY OF INJUNCTIVE RELIEF .................................................................................................. 12

MIL NO. 11:  IMPROPER NON-INFRINGEMENT ARGUMENTS BASED ON AGIS PRODUCTS ................................................................................ 13

MIL NO. 12:  NEW FINANCIAL AND ANALYTICAL DATA PROVIDED BY LIFE360 ............................................................................................... 14

Pursuant to the Court's Scheduling Order (DE 63), Plaintiff Advanced Ground Information Systems, Inc. ("AGIS") moves *in limine* to exclude reference to certain matters before the jury during *voir dire* and in the trial set to begin on March 9, 2015.

**MIL NO. 1:   THE COURT'S INDEFINITENESS RULINGS**

AGIS respectfully moves for an order precluding Life360 from offering evidence of, or referencing, for any purpose, the Court's indefiniteness rulings with respect to claims 3 and 10 of the '728 patent and claims 5 and 9 of the '681 patent, which are not claims at issue in the upcoming trial (*see* DE 79 (Stipulation regarding asserted claims).)

Life360 has indicated that it intends to use the indefiniteness rulings to rebut AGIS's charge of willful infringement.  Willfulness requires proof by the patentee "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that this likelihood "should have been known to the accused infringer."  *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

The Court's indefiniteness rulings—which concern only claims and claim terms no longer at issue at trial—can have no bearing on whether there was an objectively high likelihood that Life360's actions constituted infringement of the now-asserted claims.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").  Therefore, submitting evidence of, or referencing, the indefiniteness rulings relating to other claims not in issue can serve no purpose other than to confuse or prejudice the jury.

The Court should, therefore, preclude reference to the indefiniteness rulings under Federal Rules of Evidence 401, 402, and 403.

**MIL NO. 2:   UNTIMELY INDEFINITENESS ARGUMENTS**

AGIS respectfully moves for an order precluding Life360 from arguing, or having its witnesses assert, that any of the following terms are indefinite: (1) "or on a server," (2) "other participant devices," (3) "the requesting participant," (4) "free and operator selected text messaging" (and the similar "free . . . text message"), (5) "other criteria," and (6) "continuously transmitting," on the grounds that Life360 waived such arguments and violated the Court's Scheduling Order (DE 63).

The Court's Scheduling Order (DE 63) set deadlines for various steps in the claim construction process, culminating in the *Markman* Hearing on November 4, 2014.  The list of "claim terms to be construed" that Life360 served on August 12, 2014, pursuant to that Order included nearly two dozen terms proposed for discussion at the *Markman* hearing.  (Ex. 1, Life360's Proposed Terms for Construction.)   Life360 did not include terms 1–3 above in the August 12 list.  Life360 did include terms 4–6 above in the August 12 list, but later dropped them from its proposals.  Life360 did not include any of the six terms in the Joint Claim Construction Statement (DE 44) filed with the Court on September 3, 2014.  Nor did Life360 brief any of those terms or argue about them at the *Markman* hearing.

"Indefiniteness is a matter of claim construction . . . ."  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008).   Life360 acknowledged this during claim construction—for example, it did argue for the indefiniteness of four other terms—and yet at that time it chose not to present any argument on any of terms 1–6 above.  Then, on December 19, 2014, after fact discovery and more than a month after the *Markman* Hearing, Life360 asserted the indefiniteness of these six terms, via the report of its expert Dr. Alexander.

2

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

AGIS wrote to Life360 and specifically requested that Life360 withdraw its new indefiniteness contentions. Life360 took no action.

It is now too late for Life360 to assert this neglected defense (which in any event is for the Court, not a jury, to decide). For this reason, and because a jury could only be confused by arguments about claim construction, Life360 should be precluded from discussing indefiniteness at trial. *See, e.g.*, Fed. R. Evid. 403.

**MIL NO. 3:   CONTRAVENING THE COURT'S *MARKMAN* ORDER**

AGIS respectfully moves for an order precluding Life360 and its witnesses from presenting arguments or testimony inconsistent with the Court's claim construction of "establishing a communications network over a private remote server and not through a website or web browser." (DE 77.) In its *Markman* Order, the Court rejected the negative limitation that Life360 tried to include in its proposed construction: "establishing a communications network over a private remote server that is *not accessible by a web browser or through a website*." *Id.* at 26 (emphasis added).

In his expert report, Life360's expert Mr. Tittel argued that "to the extent that 'establishing … a communications network' is compared to the invitation process, *this process can be performed over the web* and therefore the limitation cannot be met." (Ex. 2, Tittel Report, ¶ 188 (emphasis added).) This argument contravenes the Court's ruling.

Claim construction is a question of law and has been resolved by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); (DE 77). The Federal Circuit has instructed that "[o]nce a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

3

LOTT & FISCHER, PL • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

1312, 1321 (Fed. Cir. 2009). The Court should preclude Life360 from arguing, or having its witnesses make assertions, inconsistent with the Court's claim constructions. *See MediaTek, Inc. v. Freescale Semiconductor Inc.*, No. 11-cv-5341, 2014 WL 971765, at *4–7 (N.D. Cal. Mar. 5, 2014) (excluding expert testimony on several claim terms); Fed. R. Evid. 403.

**MIL NO. 4:   CHALLENGES OF EXPERT WITNESSES IN OTHER CASES**

AGIS respectfully moves for an order precluding Life360 from referring to whether any party's expert witnesses have had opinions or testimony challenged or excluded in another case. Presenting evidence of another court's decision regarding the experts is an attempt to usurp this Court's gatekeeping function and substitute the judgment of another court, and the probative value of such collateral evidence is substantially outweighed by the danger of unfair prejudice and misleading the jury. Fed. R. Evid. 401, 402, 403. Each side should be free to cross-examine the experts vigorously, but on their opinions "*in this case*, based on his reasoning, methodology, and the facts and assumptions on which he relied *in this case*." *See Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F. Supp. 2d 1111, 1152 (N.D. Ia. 2013) (granting plaintiffs' motion in limine to exclude evidence of or reference to any previous adverse *Daubert* rulings concerning the plaintiffs' expert witnesses).

**MIL NO. 5:   DISPARAGING THE UNITED STATES PATENT AND TRADEMARK OFFICE**

AGIS respectfully moves for an order precluding Life360 from disparaging the United States Patent and Trademark Office ("PTO"), suggesting that the PTO is prone to error, not diligent, or not competent, and from arguing that the U.S. patent system is flawed and requires reform.

Generalized, unsupported indictments of the PTO and the patent system are irrelevant, serve no legitimate purpose at trial, confuse juries, are highly prejudicial, and should be excluded. *DNT,*

4

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

*LLC v. Sprint Spectrum, LP*, 2010 WL 582164, *4 (E.D. Va. Feb. 12, 2010) (excluding from trial as inappropriate, anything tending to disparage the patent and trademark office "which the court took to mean either a negative, direct, or individualized attack on the patent examiner, performance, or a generalized attack on the entire PTO."); *Bright Response, LLC v. Google Inc.*, C.A. No. 2:07-CV-371-CE, Dkt. No. 571, at 2 (E.D. Tex. Jul. 30, 2010) (". . . defendants may not speculate about the time spent reviewing the '947 patent's application or discuss the average time the PTO spends reviewing patent applications. Further, the parties may not state or imply the PTO examiners were incompetent."); *EZ Dock, Inc. v. Schafer Sys., Inc.*, Civ. No. 98-2364, 2003 U.S. Dist. LEXIS 3634, at *36 (D. Minn. Mar. 8, 2003) ("As for assertions that the PTO and its examiners are not diligent or are prone to error, the Court can find no relevance in either evidence to that effect or argument."); *Tap Phar. Prods., Inc. v. Owl Pharms., LLC*, No. 1:99-CV-2715, 2003 WL 25695241, at *1 (N.D. Ohio Feb. 18, 2003) ("Testimony . . . about the relative shortage of patent examiners at the PTO is inadmissible. The only purpose such testimony would serve would be to undermine the presumption of validity about the patents-in-suit.") (internal citation omitted); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 255–56 (W.D.N.Y. 2000) (the only purpose served by offering disparaging evidence about the PTO is to "invit[e] the jury to speculate about the possible defects, errors or omissions in the application process that led to the patent[s]-in-suit," thereby undermining the patents' presumption of validity; "generalized testimony about 'problems' in the PTO is not admissible"); Fed. R. Evid. 401, 402, 403.

### MIL NO. 6:   ENGAGEMENT OF AGIS'S COUNSEL

AGIS respectfully moves for an order precluding Life360 and its witnesses from discussing at trial the terms of AGIS's retainer agreements with its law firms, because such information is

irrelevant to any issue in this lawsuit. Allowing argument or testimony on this topic is highly prejudicial and would only confuse a jury. *See, e.g., Cardsoft, Inc. v. Verifone Sys., Inc.*, No. 2:08-CV-98-RSP, D.I. 376, at 2 (E.D. Tex. June 4, 2012) (granting patentee's motion in limine regarding any evidence, testimony, or reference to patentee's attorneys representing patentee on a contingency fee basis); *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164, *4 (E.D. Va. Feb. 12, 2010); Fed. R. Evid. 401, 402, 403.

**MIL NO. 7: UNCORROBORATED TESTIMONY REGARDING PRIOR ART SYSTEMS**

AGIS respectfully moves for an order precluding Life360 from discussing at trial any alleged prior art other than the six patents that Life360's invalidity expert relied on in his invalidity claim charts, specifically including: (i) a Benefon ESC! Personal Navigation Phone, (ii) a Gate5 PDA, and (iii) unspecified "early Nokia smartphones". (*See, e.g.*, Ex. 3, Alexander Report, ¶¶ 63–75.)

Life360's expert referred to these three alleged products in the text of his expert report, but the existence and features of these alleged products are not supported by any fact testimony or authenticated documents, and the expert's description of them is uncorroborated. Moreover, Life360's expert never included them in any of his invalidity claim charts. First, regarding the Benefon ESC! Personal Navigation Phone, Life360 produced no documentation regarding the alleged product and never disclosed it in its initial or amended invalidity contentions, as was required by the schedule (DE 63). Dr. Alexander does not provide any claim charts or otherwise attempt to line up the Benefon ESC! product with any of the asserted claims. Moreover, his mere mention of the product in passing is insufficient to corroborate any argument that the Benefon ESC! product was on sale or in use in the United States prior to September 24, 2004. Second, regarding the Gate5 product, Dr. Alexander again provides no charts or comparison of the alleged Gate5 product to the asserted claims. Life360 did not produce any examples of the

6

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

Gate5 product during discovery and did not obtain any testimony or documentation to corroborate the prior art status of the Gate5 product, other than unauthenticated Internet sources, to which Dr. Alexander does not even cite. Third, regarding the "early Nokia smartphones," neither Life360 nor Dr. Alexander have provided any evidence of the existence of any "early Nokia smartphones" that contain any features of the asserted claims. Dr. Alexander's reference to U.S Patent No. 6,518,957 is insufficient to establish the existence of "early Nokia smartphones" as prior art products. Neither Dr. Alexander nor Life360 have attempted to corroborate the existence of any "early Nokia smartphones."

Dr. Alexander never used or analyzed these three devices. Dr. Alexander points to no evidence to support his testimony that these products were available or in use prior to the required dates. Life360 also did not disclose, in its notice under 35 U.S.C. § 282, "the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit." And, Life360 sought no third-party discovery to corroborate Dr. Alexander's statements.

If Life360 or any of its witnesses were to discuss these three or any other alleged articles of prior art other than the patents that Dr. Alexander did rely on, it would serve only to confuse the jury and prejudice AGIS; therefore, the uncorroborated testimony and evidence regarding these articles should be excluded. Fed. R. Evid. 401, 402, 403; *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm.*, 180 F.3d 1354, 1366, 1370 (Fed. Cir. 1999) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony . . . . Such evidence is insufficient as a matter of law to establish invalidity of the patent."); see *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1217–18

(Fed. Cir. 2002) (affirming district court exclusion of witness testimony that was insufficiently corroborated by physical evidence).

In addition, these alleged prior art products should be excluded because Life360 failed to comply with 35 U.S.C. § 282(c) by providing the requisite notice to AGIS at least thirty days before trial.

### MIL NO. 8: TESTIMONY FROM MR. ALEX HARO, OR FROM AN EXPERT RELYING ON DISCUSSIONS WITH MR. HARO, REGARDING SPECIFIC PORTIONS OF LIFE360'S SOURCE CODE

AGIS respectfully moves for an order to preclude Life360, through its fact witnesses or its expert Mr. Tittel, from referring to Life360's source code in support of these non-infringement positions:

- That the functionality of the "call button" in Life360's app does not satisfy the automatic calling required by claim 7 of the '728 patent and claim 1 of the '681 patent (*see* Ex. 2, Tittel Report at ¶¶ 83–84, 107–108);

- That the "message," "call," "history," or "update" buttons are not "soft switches," as required by claim 1 of the '681 patent (*see id.* at ¶¶ 113, 118);

- ███████████████████████████████████████ as required by claims 1 and 2 of the '954 patent (*see id.* at ¶¶ 128–136, 173);

- ███████████████████████████████████████ as required by claim 2 of the '954 patent, and claims 1–8 of the '441 patent (*see id.* at ¶¶ 170–172, 230); and

- ███████████████████████████████████████ as required by claims 1 and 2 of the '954 patent and claims 1–8 of the '441 patent (*see id.* at ¶ 174–175, 207, 221, 241, 247–248).

Life360's non-infringement expert, Mr. Tittel, admitted in his deposition that he based these positions in part on information he received from Life360, to which AGIS has not had access. (Ex. 4, Tittel Dep. Tr. at 13:23–14:21.)

Life360 designated a single 30(b)(6) witness, Life360's President Alex Haro, to testify regarding Life360's source code. Despite his designation under Rule 30(b)(6), Mr. Haro answered ████

8

████████████████████████████████████████ in answering questions about the source code with respect to each of the functionalities in the above bullet-pointed list. (*See, e.g.*, Ex. 5, Haro Dep. Tr. at 260:8–24; 354:14–24; 357:20–258:7; 359:10–25; 363:1–3; 364:8–366:18.) Moreover, Mr. Haro admitted in his deposition that: █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ (*See id.* at 29:24–30:16; 31:10–12; 40:14–16; 317:4–10.)

After the deposition, Mr. Tittel had private, unrecorded conversations with Mr. Haro about the very same functionalities. (*See* Ex. 4, Tittel Dep. Tr. 13:23–14:21.) Mr. Tittel then relied on these discussions in his analysis of all of Life360's source code:



(*Id.* at 13:13–19.) Mr. Tittel's reliance on Mr. Haro specifically affected his analysis of the functionalities identified in the bullet-pointed list. (*See* Ex. 2, Tittel Report at ¶¶ 83–84, 113, 116, 118, 133, 136–137, 173, 170–172, 174–175, 207, 221, 230, 241, 247–248.)

An example highlights the difference between Life360's Rule 30(b)(6) testimony and the witness's later (alleged) descriptions to Mr. Tittel. During his deposition, Mr. Haro was questioned regarding the frequency of the Life360's app's default update rate and, specifically, regarding the file "BackgroundLocationManager.m." This file includes the following lines of code:

9

LOTT & FISCHER, PL • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191



(LIFE_SOURCE_001351; LIFE_SOURCE_001562.)

Mr. Haro did not know 

* * *

(Ex. 5, Haro Dep. Tr. at 364:21–24; 366:16–21.)

Yet Mr. Tittel determined:



(Ex. 2, Tittel Report at ¶ 174) after having been specifically guided on this point by Mr. Haro:



[REDACTED]

(Ex. 4, Tittel Dep. Tr. 13:23–14:8 (emphasis added).)

Life360 should be precluded from presenting testimony, from either Mr. Haro or Mr. Tittel, referring to Life360's source code in support of the bullet-pointed non-infringement arguments. *See Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, Civ. A. No. 3:06-cv-0271-B, 2007 WL 4410370, at *8 (N.D. Tex. Dec.14, 2007) ("Federal courts have interpreted [Rule 30(b)(6)] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.1996) (holding that the deponent must "review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition . . . to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial."); *Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa. Aug.13, 1991) ("Under Rule 30(b)(6), [the organization] has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is 'to avoid trial by ambush.'").

**MIL NO. 9:   TESTIMONY REGARDING CHRIS HULLS' BACKGROUND**

AGIS respectfully moves for an order precluding Life360 from providing evidence about the background of Life360's CEO, Chris Hulls, because he asserted the irrelevance of this information and refused to answer deposition questions about it, including deposition questions

11

regarding his education, the founding of his company in the 2007–2008 timeframe, and other biographical information.  (Ex. 6, Hulls Dep. Tr. at 11:19–14:8 ("Why is that relevant?"; "I wanted to focus this on the case, not my personal life."; "Can you explain how it's relevant?"; "Again, can you explain why that's relevant?"; "Again, relevance.  I don't understand that."; "Again, if you explain how it's relevant to the case, I'm happy to do it, but I don't want to get into my personal life.").)  His counsel agreed with his assessment of the irrelevance and counseled that such information need not be provided:  "[i]f you don't feel comfortable answering a question, you don't need to answer the question."  (*Id.* at 12:3–5.)  Mr. Hulls responded by saying "I don't feel comfortable going beyond the case."  (*Id.* at 12:6–7.)

Because counsel was not allowed to inquire into this area of Mr. Hulls' background, and could not test the credibility of any background story he would provide at trial, any such testimony should be precluded.  Fed. R. Evid. 401, 402, 403; *see Service Employees Intern. Union v. Roselli*, 2010 WL 963707, at *4–5 (N.D. Cal. Mar. 16, 2010) (granting plaintiffs' motion *in limine* to preclude defendants from presenting evidence that was withheld during deposition because "having avoided disclosing in discovery the materials sought by plaintiffs . . . on grounds of relevancy, it would be unfair sandbagging to allow defendants to now assert those same materials").

**MIL NO. 10:  ANY REFERENCE TO THE POSSIBILITY OF INJUNCTIVE RELIEF**

AGIS respectfully moves for an order precluding Life360 from referencing the possibility of injunctive relief in this case because this information is irrelevant to the issues at trial, its probative value is substantially outweighed by its prejudicial value, and it will confuse the jury. Since the question of injunctive relief is always for the court, Life 360 should not be allowed to make any inflammatory and prejudicial arguments suggesting that, for example, a verdict for AGIS will prevent families who depend on the Life360 app to monitor the safety of their

12

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

children from continuing to do so.  *See, e.g., Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*, No. 08-0157, 2008 WL 5552302, at *1 (E.D. Va. Sept. 12, 2008) (granting motion to preclude defendants from making any mention of plaintiff's request for an injunction in front of the jury); *Richards Mfg. Co. v. Thomas & Betts Corp*, No. 01-4677, 2005 WL 6043427, at *1 (D.N.J. Oct. 31, 2005) (granting motion in limine to bar the introduction of evidence that party sought injunctive relief); *John Mezzalingua Assoc., Inc. v. Arris Int'l, Inc.*, No. 03-353, 2003 WL 23273967, at *1 (W.D. Wis. Nov. 26, 2003) (granting motion to exclude any references to the preliminary injunction proceeding); Fed. R. Evid. 401, 402, 403.

**MIL NO. 11: IMPROPER NON-INFRINGEMENT ARGUMENTS BASED ON AGIS PRODUCTS**

AGIS respectfully moves for an order precluding Life360 from making a non-infringement argument, or offering any testimony, that compares the Life360 app to any of AGIS's products.

For example, in his expert report, Life360's expert Mr. Tittel bases several of his non-infringement positions on interpretations of claim scope based on testimony from AGIS's witnesses about the operation of AGIS's LifeRing product: (i) "operator selected text messages" (Ex. 2, Tittel Report, ¶ 94); (ii) "e) using software to create new or modify old symbols and associate the symbol to a new unused soft switch or a renamed existing soft switch and then downloading the new or renamed soft switch and the associated symbol to the cell phone and remote cell phone(s) so that the new or renamed soft switch and associated symbol can be used on the cell phone" (*id.* at ¶¶ 109–112); (iii) "transmitting from a remote network server that can communicate with each cell phone/PDA in said communications network additional maps to each user's cell phone, said server including a database that contains additional maps not available on each user's cell phone database that can be downloaded by each cell phone/PDA by

communicating with the server" (*id.* at ¶¶ 143–146); (iv) "public network" (*id.* at ¶¶ 152–155); and (v) "common interest network" (*id.* at ¶¶ 236–237).

Comparing the patentee's product to the accused product is improper as a matter of patent law. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006). Therefore, any such non-infringement argument or testimony is more prejudicial than probative and should be excluded. Fed. R. Evid. 403.

**MIL NO. 12: NEW FINANCIAL AND ANALYTICAL DATA PROVIDED BY LIFE360**

AGIS respectfully moves for an order precluding Life360 from introducing, or providing any argument or testimony based on, financial and analytic data produced after the close of fact discovery (*i.e.*, after AGIS could no longer depose a Life360 witness about them). Specifically, AGIS moves to exclude from evidence DTX-298 (LIFE_NATIVE_671383 (replacement)), DTX-354 (LIFE_NATIVE_671383), Appendix C-1 of Mr. Peter Gampel's Report[2] (which contains the same data), and any portion of Mr. Gampel's Report that references the data contained in these documents (Ex. 7, Gampel Report at 8, 35–36, 45).

During discovery, AGIS served an interrogatory on Life360 requesting "Separately for each Accused Life360 Product and component or software update thereof, identify it by application name, application version number, or other identifier; state on a monthly or quarterly basis the number of people who downloaded, purchased, licensed or used it, and the number of times it was downloaded, purchased, licensed, or used, since April 18, 2006 . . . ." (Ex. 8, AGIS First Set of Interrogatories to Life360, at 3.) AGIS also requested "For each of Life360's smartphone software applications, documents sufficient to show the revenues, gross profits, and net profits generated from distribution of these products to customers, or use of the products by

---

[2] Appendix C-1 of Mr. Gampel's Report is also entered on Life360's Exhibit List as DTX-505). It is AGIS's understanding that DTX-298 and DTX-354 are the same document.

customers, in the United States since the issuance of the asserted patents." (Ex. 9, AGIS First Set of Document Requests, at 8.)  At his deposition, Life360's Head of Finance, Sam Filer, testified that he was unable to generate a profit and loss statement that reflected only income and expenses incurred inside the U.S.  (Ex. 10, Filer Dep. Tr. at 29:5–25, 30:25–31:20.)

DTX-298/DTX-354 purportedly contains a breakdown of monthly data regarding active users as well as a breakdown of U.S. and non-U.S. revenues.  The document at DTX-298/DTX-354 was created at the request of Mr. Gampel specifically for this litigation and appears to have been generated from some (unidentified and unproduced) Life360 records.  (Ex. 11, Gampel Dep. Tr. at 33:24–35:7, 36:4–10, 57:8–59:17, 61:8–62:1, 69:21–70:6, 187:22–188:19, 190:2–25.) This data was not produced until January 19, 2015, well after the close of fact discovery and should be excluded for that reason alone.  *Memry Corp. v. Ky. Oil Tech., N.V.*, 2007 U.S. Dist. LEXIS 89645, at *12 (N.D. Cal. Nov. 27, 2007) ("[a]s a general proposition, no party will be allowed to offer facts or documents that were not disclosed in discovery that go beyond information provided in discovery").

Further, at least DTX-298/DTX-354 is hearsay.  While an expert may rely on hearsay in forming his opinions, Rule 703 "is not an open door to all inadmissible evidence disguised as expert opinion." *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir.1987).  "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir.2013); *see Industrial Engineering & Development, Inc., v. Static Control Components, Inc.*, No. 8:12–cv–691–T–24–MAP, 2014 WL 4986482 at *3 (M.D. Fla. Oct. 6, 2014) (granting in part plaintiff's motion and precluding expert from testifying as to specific sale dates, unless that testimony is based on his personal knowledge or evidence that is otherwise

admissible). Because the late produced financial and analytical data is hearsay, and because AGIS was not afforded the opportunity to test this data during fact discovery with Life360's witnesses, any argument or testimony based on this data is more prejudicial than probative and should be excluded. Fed. R. Evid. 403, 801, 802.

*[signature on following page]*

Date:   February 19, 2015            Respectfully submitted,

**LOTT & FISCHER, PL**

**s/ Rose Cordero Prey**
Ury Fischer
Florida Bar No. 048534
E-mail: ufischer@lottfischer.com
Adam Diamond
Florida Bar No. 091008
E-mail: adiamond@lottfischer.com
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191

Mark A. Hannemann*
New York  Bar No. 2770709
E-mail: mhannemann@kenyon.com
Thomas R. Makin*
New York Bar No. 3953841
E-mail: tmakin@kenyon.com
Matthew G. Berkowitz*
New York Bar No. 4397899
E-mail: mberkowitz@kenyon.com
Rose Cordero Prey*
New York Bar No. 4326591
E-mail: rcordero@kenyon.com
Vincent J. Rubino, III*
New York Bar No. 4557435
E-mail: vrubino@kenyon.com
George E. Badenoch *
New York Bar No. 1165323
E-mail:  gbadenoch@kenyon.com
**KENYON & KENYON, LLP**
One Broadway
New York, NY  10004-1007
Telephone:     (212) 425-7200
Facsimile:      (212) 425-5288
*\* admitted pro hac vice*
**Attorneys for Plaintiff Advanced Ground Information Systems, Inc.**

CASE NO. 9:14-CV-80651-DMM

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on February 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                s/ Ury Fischer
                Ury Fischer

## SERVICE LIST
*Advanced Ground Information Systems, Inc. v. Life360, Inc.*
**United States District Court, Southern District of Florida**
**CASE NO. 9:14-CV-80651-DMM**

| | |
|---|---|
| **SHUTTS & BOWEN, LLP**<br>Eric C. Christu<br>Florida Bar No. 434647<br>E-mail: echristu@shutts.com<br>Daniel Barsky<br>Florida Bar No. 25713<br>E-mail: dbarsky@shutts.com<br>525 Okeechobee Blvd., Suite 1100<br>West Palm Beach, FL 33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530 | |
| **THE WEBB LAW FIRM**<br>Kent E. Baldauf, Jr.*<br>E-mail: kbaldaufjr@webblaw.com<br>Bryan P. Clark*<br>E-mail: bclark@webblaw.com<br>Cecilia R. Dickson*<br>E-mail: cdickson@webblaw.com<br>James L. Bosco, Jr.**<br>E-mail: jbosco@webblaw.com<br>One Gateway Center<br>420 Ft. Duquesne Blvd.<br>Suite 1200<br>Pittsburgh, PA 15222<br>Telephone: (412) 471-8815<br>***Attorneys for Defendant Life360, Inc.*** | |