**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ADVANCED GROUND INFORMATION SYSTEMS, INC., | CIVIL ACTION NO. 9:14-cv-80651-DMM |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| LIFE360, INC., | |
| Defendant. | |

**DEFENDANT LIFE360'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND NON-TAXABLE EXPENSES**

<u>**TABLE OF CONTENTS**</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  LEGAL BACKGROUND .................................................................................. 3

IV.  LIFE360 IS ENTITLED TO ITS FEES IN THIS CASE .................................. 5

    A.   **AGIS Had No Reasonable Chance of Success of Proving Infringement of the Method Claims** ................................................................................................ 5

        1. **AGIS Knew or Should have Known that it Could Not Succeed on its Theory Regarding the Method Claims Because all Claims Require Steps to be Performed by Multiple Actors** ................................................................................................ 7

        2. **AGIS Attempted to Confuse the Infringement Issues by Asserting Unsupported and Previously Undisclosed Infringement Theories** ................................................. 9

          a. **AGIS's "administrative user" theory** ........................................................ 9

          b. **AGIS's joint infringement theory** .......................................................... 10

          c. **AGIS's "unincorporated association" theory** ........................................ 13

    B.   **AGIS' Theory on Claim 1 of the '954 Patent Contravened the Court's Markman Order and Was Objectively Baseless** ........................................................... 14

    C.   **AGIS' Infringement Theory on Claim 4 of the '441 Patent Contravened the Court's Construction of "Common Interest Network"** ................................. 16

    D.   **AGIS Litigated this Case in Bad Faith** ................................................... 17

V.   CONCLUSION ............................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476, 488 (1964) ............................................................................ 18

*Cartner v. Alamo Group, Inc.*,
    2014 WL 1394951 (Fed. Cir. Apr. 11, 2014) ............................................. 11

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573, 1578 (Fed. Cir. 1983) ........................................................ 3

*Desenberg v. Google, Inc.*,
    392 Fed. Appx. 868, 871 (Fed. Cir. 2010) ................................................. 10

*Dominant Semiconductors Sdn. Bhd v. OSRAM GmbH*,
    524 F.3d 1254, 1260 (Fed. Cir. 2008) ........................................................ 4

*Eon Corp. IP Holdings LLC v. Flo TV Inc.*,
    802 F. Supp. 2d 527, 535 (D. Del. 2011) ................................................... 10

*Eon-Net LP v. Flagstar Bancorp*,
    653 F. 3d 1314 at 1326 .............................................................................. 4, 5

*Global Patent Holdings, LLC v. Panthers BRHC LLC*,
    586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) ........................................... 10

*Highmark v. Allcare Health Management Systems*,
    706 F. Supp. 2d 713, 731 (N.D. Tex. 2010) .............................................. 13

*Highmark v. Allcare*,
    134 S.Ct. 1744 (2014) ............................................................................... 13

*Home Gambling Network, Inc. v. Piche*,
    No. 2:05-CV-610, 2014 WL 2170600 (D. Nev. May 22, 2014) .............. 13

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
    558 F.3d 1368, 1379-81 (Fed. Cir. 2009) .............................................. 5, 13

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302, 1310 (Fed. Cir. 2013) ........................................................ 5

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
    786 F.3d 899 (Fed. Cir. 2015) ..................................................................... 6

*Akamai Technologies, Inc.*, v. *Limelight Networks, Inc.*
  134 S. Ct. 2111 (2014) .............................................................................................. 6, 11

*MarcTec, LLC v. Johnson & Johnson,*
  664 F. 3d 907, 919 (Fed. Cir. 2012) ................................................................................. 4

*Mathis v. Spears,*
  857 F.3d 749, 757-58 (Fed. Cir. 1988) ........................................................................... 3

*Muniauction, Inc. v. Thomson, Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008) ..................................................................................... 11

*Octane Fitness v. ICON Health & Fitness*,
  134 S. Ct. 1749, 1756 (2014) ......................................................................................... 4

*Taurus IP, LLC v. Daimler Chrysler Corp.*,
  2013 WL 4034384 (Fed. Cir. Aug. 9, 2013) ................................................................. 15

## STATUTES

28 U.S.C. § 1927 ................................................................................................................. 1

35 U.S.C. § 271(c) ....................................................................................................... 17, 18

35 U.S.C. § 285 .......................................................................................................... 1, 3, 4

## RULES

Fed. R. Civ. P. 17(b)(3)(A) .............................................................................................. 13

Federal Rule of Civil Procedure 54(d), Local Rule 7.3 ...................................................... 1

Pursuant to Federal Rule of Civil Procedure 54(d), Local Rule 7.3, 28 U.S.C. § 1927, 35 U.S.C. § 285, this Court's Final Judgment (DE 171), and this Court's inherent powers, Life360 Inc. ("Life360") hereby moves the Court to deem this case an exceptional case, and to award Life360 its reasonable attorneys' fees and non-taxable expenses, along with pre- and post-judgment interest, from Advanced Ground Information Systems, Inc. ("AGIS") in the amounts of each set forth in the accompanying Declaration of Kent E. Baldauf, Jr.[1,2]

## I.     INTRODUCTION

In the recent *Octane Fitness* decision, the Supreme Court held that an exceptional case under 35 U.S.C. § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." When considering key undisputed facts about the operation of the accused Life360 app, the language of the asserted method claims, and the governing law concerning infringement of a method claim, this is a case meeting that definition. The record clearly demonstrates that the case AGIS filed and maintained was exceptionally weak, especially with respect to the asserted method claims which were the *only* claims in the case after November 21, 2014.

From the very beginning of this case, AGIS knew, or should have known, that every asserted method claim includes steps that can only be performed by multiple users on different cellular phones, or even by third-party servers. AGIS also knew, or should have known, that the law is clear that infringement of a method claim requires the same "single actor" or "single entity" to perform

---

[1]     As explained below, the crux of Life360's argument as to why fees are appropriate concerns AGIS's infringement allegations with respect to the method claims. Thus, to the extent the Court is not inclined to award Life360 the full extent of its fees and expenses, the Court should consider awarding the fees and expenses incurred after the Court's *Markman* Order since, after the *Markman* Order, this case concerned only method claims.

[2]     Life360 also requests fees incurred in preparing this motion, which have yet to be invoiced.

each and every step.  Against this backdrop, AGIS should have never asserted that Life360 infringes these claims when "a user" uses the Life360 app on his or her own phone.  Worse yet, once Life360 highlighted the flaws in AGIS's theory during summary judgment, AGIS responded with unsubstantiated factual allegations (i.e., that the claim steps occur "automatically" on other users' phones through the invitation process) and undisclosed and unsupportable theories of joint infringement.  With respect to the '954 and '441 Patents in particular, AGIS's assertion of these patents became particularly egregious after claim construction foreclosed any possible relief as to these patents.  Finally, AGIS's misrepresentations and vexatious conduct throughout this litigation add to the overall exceptionality of this case.

## II.    FACTUAL BACKGROUND

This case began when AGIS sent Life360 a letter demanding that, within three days, Life360 pay an unstated amount of money or shut down its service due to alleged infringement of four broadly-characterized patents.  True to its threat, AGIS filed suit against Life360 less than 78 hours later, alleging that Life360 infringed U.S. Patent No. 7,031,728 (the "'728 patent"), U.S. Patent No. 7,672,681, U.S. Patent No. 7,764,954 (the "'954 patent"), and U.S. Patent No. 8,126,441 (the "'441 patent") (collectively, the "patents-in-suit").  Despite that neither party had ever lost business to, or even heard of, the other, AGIS's complaint alleged that it was being irreparably harmed by Life360 and, accordingly, Life360 should be enjoined from further infringement.  Unless, of course, Life360 paid up.

AGIS and Life360 stipulated to a proposed Scheduling Order that was entered by the Court on July 10, 2014.  DE 31.  In the Order, AGIS was obligated to disclose any theory based on "joint acts of multiple parties" in its infringement contentions, including "the role of each such party in the direct infringement."  *Id*.  AGIS served its infringement contentions on July 23, 2014, in which it asserted that "a user" of the Life360 app performed each step of the method

claims.  *See* Ex. 5.  AGIS's infringement contentions expressly disavowed any theory of joint infringement, but stated it would supplement its contentions if the law were to change in its favor.  *Id.*  On December 5, 2014, AGIS served supplemental infringement contentions that still asserted the "a user" theory of infringement, again explicitly excluding "joint infringement."  *See* Ex. 6, at 2.  The "a user" theory was reiterated by Dr. Jaime Carbonell, AGIS's expert, in his December 19, 2014 report, and Dr. Carbonell stood by this theory during his deposition.  *See* Ex. 7, at 6; Ex. 8, at 21:9-25.

Life360 moved for summary judgment on the basis that a single user of the Life360 app could not possibly perform every step of the asserted method claims due to activities that must be performed by persons and entities other than the allegedly infringing "user."  DE 101.  In opposition, AGIS (incorrectly) asserted that the method steps are performed "automatically" on the other users' phone as a result of the first user sending these other users an invitation.  *See* DE 109 at 6 ("By following the link provided by the admin, the software and data is downloaded and stored on the invitee's phone automatically.")  AGIS also argued, for the first time, that multiple users in a circle infringe by their combined acts due to the control and direction between the users.  DE 109 at 12.  Life360's motion was denied and the case went to trial.  AGIS continued to argue its new joint infringement theory during trial but lost by a jury verdict of non-infringement.

## III.   LEGAL BACKGROUND

District Courts may award reasonable attorney fees to a prevailing party in a patent case when the case is "exceptional."   35 U.S.C. § 285.  The Patent Act includes this provision "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).  Recoverable expenses include all "sums that the prevailing party incurs in the preparation for and performance of

3

legal services related to the suit," extending beyond attorneys' fees to, *e.g.*, outside consultants and paralegal services. *Id.* at 1577-78; *see also Mathis v. Spears*, 857 F.3d 749, 757-58 (Fed. Cir. 1988).

A case is "exceptional" under § 285 if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014). The *Octane Fitness* Court expressly overruled the previous, inflexible framework that required a prevailing party to establish either materially inappropriate conduct or both subjective bad faith and objective baselessness. *Id.* The Court's decision also overruled the "clear and convincing" standard for proving exceptionality under § 285 and instead held that the analysis "demands a simply discretionary inquiry; it imposes no specific evidentiary burden, much less a high one." *Id.* at 1758. Under *Octane Fitness*, courts may determine exceptionality on a flexible, case-by-case basis "considering the totality of the circumstances" and non-exhaustive factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756.

Infringement allegations are objectively baseless when "no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)*; see also Eon-Net LP v. Flagstar Bancorp*, 653 F. 3d 1314 at 1326 (finding infringement claims objectively baseless where "the written description clearly refutes Eon-net's claim construction."). The continued assertion of an infringement theory foreclosed via claim construction also supports a finding of exceptionality. *MarcTec, LLC v. Johnson & Johnson*, 664 F. 3d 907, 919 (Fed. Cir. 2012) (awarding fees where the patentee's assertion of its proposed

construction and continued litigation after claim construction was unreasonable and lacked good faith).

To establish subjective bad faith, "actual knowledge of baselessness is not required…, a defendant need only prove reckless conduct." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013). Courts must also consider the totality of the circumstances, including indirect and circumstantial evidence of bad faith. *Id.* at 1310-11. "Factors such as the failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose are factors which can be indicative of bad faith." *Id.* at 1311. A patentee's misrepresentations about legal authority or factual aspects of a case also reflect bad faith. *See, e.g., ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1379-81 (Fed. Cir. 2009). Exploiting the high-cost of defending baseless claims to force litigants into a settlement can also weigh in favor of exceptionality. *See Eon-Net LP v. Flagstar Bancorp*, 653 F. 3d 1314 at 1328 ("[T]he appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith.").

## IV.    LIFE360 IS ENTITLED TO ITS FEES IN THIS CASE

Life360 is the prevailing party because every patent claim asserted against it was found to be not infringed or indefinite, leading to a judgment against AGIS as to each count of the Complaint. DE 171 (final judgment). Life360 should be awarded its attorney's fees because, considering the totality of the circumstances, AGIS's baseless arguments and bad faith conduct stand out from ordinary cases.

### A.    AGIS Had No Reasonable Chance of Success of Proving Infringement of the Method Claims

AGIS's complaint was filed on May 15, 2014, and alleged infringement of several claims written in both "method" and "system" formats.[3]   Shortly thereafter, on June 2, 2014, the United States Supreme Court issued its opinion in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111 (2014).   This decision confirmed that, under governing Federal Circuit precedent, direct infringement of a method claim requires a showing that a *single party* performed each and every step of the claim and, further, established that inducement liability must be predicated on an act of direct infringement (*i.e.,* for a method claim, infringement by a single party).  134 S. Ct. at 2118; *see also Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 786 F.3d 899 (Fed. Cir. 2015) (finding non-infringement on remand).   From that point forward, AGIS knew or should have known that it could not possibly succeed in proving infringement of the method claims.   On November 21, 2014, the Court issued its Markman Order which held the system claims (the only non-method claims in the case) indefinite.   DE 77, at 12, 16, 19.   Accordingly, from the date of the Markman Order, AGIS had no reasonable chance of success of proving infringement of *any* claim, and should have agreed to dismiss the case entirely.[4]

For the method claims, AGIS asserted that Life360 "indirectly infringes by inducing and contributing to infringement by its customers by distributing the [Life360 app] and instructing the users of the application to carry out the steps of the claimed method."  *See, e.g.*, Ex. 6, '728 patent claim chart, at 7.[5]   AGIS's claim that "a user" of the Life360 apps performs each and

---

[3]      Of the asserted claims, claim 7 of the '728 Patent, claim 1 of the '681 Patent, claims 1 and 2 of the '954 Patent, and claims 1-8 of the '441 Patent were in method form while claims 3 and 10 of the '728 Patent and claims 5 and 9 of the '681 Patent were in system/device form.

[4] The fees and expenses listed in Exhibit A to the attached Declaration of Kent E. Baldauf, Jr. that were incurred prior to November 21, 2014 amount to $151,054.03.

[5] AGIS also asserted that Life360 allegedly "directly infringes by carrying out all steps of the claimed method during testing" of the Life360 app.  *See, e.g.*, Ex. 5, '728 patent claim chart, at 7. However, AGIS showed no interest in pursuing this theory, presumably because it had no corresponding damages theory.  Even through trial, AGIS could not identify any triable issues of

every step of the method claims was the *only* theory of indirect infringement that AGIS asserted, and AGIS maintained this theory in its supplemental infringement contentions on December 5, 2014 and again in Dr. Carbonell's expert report on December 19, 2014.  Dr. Carbonell stood by this "single user" theory during his deposition by explaining that the claimed steps are all performed by a single administrative user downloading the Life360 app and sending an invitation.  *See* Ex. 8, at 52:13-23, 53:5-11.

        **1.**      **AGIS Knew or Should have Known that it Could Not Succeed on its Theory Regarding the Method Claims Because all Claims Require Steps to be Performed by Multiple Actors**

Every method claim asserted against Life360 includes one or more steps that require actions by *multiple* cell phones and/or cell phone users, taking place separately on "each" phone in a given circle.  For example, claim 7 of the '728 Patent and claim 1 of the '681 Patent require "providing…calling software *in each cellular phone*" and "providing and storing [telephone numbers] *in each of the participant cellular phones*."  Claim 1 of the '954 Patent requires "providing *each cellular/PDA/GPS phone* with a software application program and database" and "displaying *on each cell phone display* one or more symbols representing the users in the network."  Claims 1 and 4 of the '441 Patent require "displaying, on the touch display screen of *each communication device* . . . at least the identity data and the location data."  Likewise, claim 4 of the '441 Patent requires "*each network participant* automatically transmitting . . . at least its identity and location data."  Several of the asserted claims additionally require certain steps to be performed by third-party servers.  For example, claims 1 and 4 of the '441 Patent require "the *private remote server*" to transmit to "*each* of the other [participant] devices" when it receives data.  Claim 1 of the '954 Patent requires "transmitting from *a remote network server* that can

---

fact relating to "testing" by employees.  The Court agreed and removed this theory from the jury instructions.

communicate with *each cell phone/PDA*" and "communicating additional maps from *a remote network server* that can communicate with each cell phone/PDA in said communications network."

According to AGIS, "a user" performs the steps of downloading software onto "each" phone, storing information on "each" phone, transmitting information from "each" phone, and displaying information on "each" phone. AGIS specifically contended that these steps were performed when "*a user*…downloads and installs the Life360 app on *a smartphone*." *See, e.g.,* DE 101-9 (emphasis added).[6] But while AGIS alleged that this was happening, at no point throughout this case did AGIS ever come forward with any evidence whatsoever supporting this allegation. In particular, AGIS could not show that "a user" of the Life360 app could provide calling software in each cellular phone, provide and store telephone numbers in each of the participant cellular phones, or display on each cell phone display symbols or location data of the users in the network. As to the steps explicitly requiring performance by a server or a third-party, AGIS ignored the basic "single actor" requirement for direct infringement and contended that a user somehow "caused" these steps to be performed. AGIS never explained how Life360 could possibly infringe a claim requiring different steps to be performed by a user, a Life360 server, and a third-party maps server run by Google or Apple.

In fact, as the evidence gathered during discovery and introduced at trial showed, a "user" of the Life360 app cannot perform the claimed steps because the user does not have the requisite control of the cellular phones of the other users in his or her circle. While, for example, a user can download the Life360 software onto his own cell phone, he cannot download that software

---

[6]     According to AGIS's technical expert, "a user of the Life360 app on a smartphone performs [these] step[s] . . . when he or she downloads and installs the Life 360 app on a smartphone." Ex. 7, at ¶¶ 72-73, 88-89, 105-06.

onto another user's phone.  Ex. 17, at ¶85, 104; Ex. 12, at 82:3-21.  By way of another example, neither Life360 nor any of its users controls or maintains a "remote network server" that can transmit additional maps to others in the circle.  Ex. 17, at ¶147.  Simply put, because the Life360 app does not permit the type of control over others' cell phones that would be required to infringe the method claims, these claims cannot be infringed, and AGIS should have recognized this during its pre-suit investigation.

> **2.     AGIS Attempted to Confuse the Infringement Issues by Asserting Unsupported and Previously Undisclosed Infringement Theories**

In response to Life360's motion for summary judgment of non-infringement, in which Life360 explained that AGIS's infringement theory failed as a matter of law because no single actor performs all of the steps, AGIS attempted to backfill its case and confuse the issues by creating new theories that lacked any legal or factual basis.  AGIS never disclosed its new theories to Life360 as required by the Scheduling Order, but instead chose to spring these allegations on Life360 only weeks before trial.  The timing and weakness of AGIS's new theories helps to highlight the basic flaws in AGIS's case, and strongly suggests that AGIS knew of these flaws at least at the point of summary judgment, further supporting a finding of exceptionality.

> **a.     AGIS's "administrative user" theory**

One of the new theories that AGIS introduced in its opposition to Life360's Motion for Summary Judgment is that an administrative user sending an invitation ("a message and a link") somehow performs the requisite actions on multiple phones.  DE 109, at 6-7.  According to this "administrative user" theory, sending an invitation with a hyperlink assists another user in downloading the app.  AGIS contended the sending of this link constitutes providing software and databases *in each user's* cellular phone.  DE 109, at 6-7.

But sending the hyperlink does no such thing. It simply identifies a location where another user can go to obtain the Life360 software. In sending the link, no software or database is "provided" to the other user. To cloud this gaping deficiency, AGIS represented to the Court that "[b]y following the link provided by the admin, the software and data is downloaded and stored on the invitee's phone *automatically*." *Id*. (emphasis added). This statement is false. Worse, AGIS knew this statement was false because it had already extensively tested the Life360 app and examined the source code. Indeed, AGIS's own expert *admitted* that clicking a link does not "automatically" download software when he testified that a user, after receiving an invitation, must visit an app store, put in a password, agree to terms and conditions, and then manually download the software. Ex. 12, at 81:25-82:7; 82:22-84:11. Tellingly, once AGIS survived summary judgment, it never again contended that these actions happen "automatically."

### b.    AGIS's joint infringement theory

In another last-minute attempt to keep its case alive, AGIS advanced an eleventh hour joint infringement theory that was never disclosed and even disclaimed earlier in the case. In opposing summary judgment, AGIS argued that multiple users acting together somehow form a "single entity" because of common direction and control between them. DE 109 at 12. But, by AGIS's own admission, joint infringement was not part of this case. Early on, the parties agreed that joint infringement theories, if any, must be disclosed in AGIS's infringement contentions:

> Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described

DE 31 (Scheduling Order). Disclosure of joint infringement theories at an early stage of a case is crucial. *See, e.g., Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (dismissing complaint because plaintiff failed to allege "control or direction" for joint infringement); *Desenberg v. Google, Inc*., 392 Fed. Appx. 868, 871 (Fed. Cir.

2010) (affirming dismissal of complaint because plaintiff did not sufficiently plead its joint infringement theory); *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, 802 F. Supp. 2d 527, 535 (D. Del. 2011) (requiring "plaintiffs complaint to satisfy the Federal Circuit's 'control or direction' standard for joint infringement claims").

AGIS chose not to pursue or disclose a joint infringement theory in its infringement contentions, and *expressly stated* that it was not asserting joint infringement because it is unsupported by the law:

> AGIS notes that the state of the law with regard to infringement of method claims is currently in flux. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 131 S.ct. 2111 (2014) (inviting the Federal Circuit to reevaluate its holding in *Muniauction, Inc. v. Thomson, Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) to consider divided direct infringement of method claims under 271(a)). Therefore, depending upon further changes in the law, or upon the content of additional evidence produced by Life360, AGIS may amend its contentions to plead joint direct infringement.

Ex. 6, at 2.  The law which requires joint infringement to satisfy the control-or-direction standard was established in the Federal Circuit's 2008 decision in *Muniauction* and was unchanged by the U.S. Supreme Court in *Limelight Networks* on June 2, 2014, shortly after AGIS filed its complaint.

AGIS acted in bad faith when it defied this Court's Scheduling Order by introducing a joint infringement theory first in opposition to Life360's Motion for Summary Judgment, and then again at trial.  *See Cartner v. Alamo Group, Inc*., 2014 WL 1394951,*5-10 (Fed. Cir. Apr. 11, 2014) (nonprecedential) (affirming fee award in part for patentee's failure to disclose its equivalency theory).  In numerous instances following summary judgment, AGIS attempted to support this joint infringement theory by arguing "control or direction" or "vicarious liability." For example, during summary judgment AGIS argued that a parent, in a Life360 circle that includes a parent and a minor child, is a direct infringer since a parent performs some steps of the

patented methods, and "controls or directs" his or her children to perform the remaining steps.

DE 109 at 12 (citing *Muniauction* in support of this theory).

AGIS then continued to pursue its joint infringement theory during trial.  In defending its

case, AGIS explained to the Court:

> And so the single entity could be each…family.  For example,
> where -- you know, the classic one where the children are
> under the **control and direction** of their parents and the parents are
> **vicariously liable** for their actions. There is no argument,
> whatsoever at all, that if you look at the two users as an entity, all
> of the steps are performed.

3/10/15, Trial Tr., at 150:1-5 (emphasis added).  The next day at trial, AGIS retreated from the

"control and direction" position it took the previous day and in its opposition to summary

judgment, stating that:

> The analogy of *Muniauction* here and those other cases really is
> not applicable at all to the Life360 circle setup. In *Muniauction* and
> in other cases, it would be as though we were accusing Life360
> and its customers of combining and jointly being an infringer.
> That's what all of those cases are about. That is not at all what
> we're saying here.

Ex. 16, at 275:14-19 (3/11/15 Trial Tr.).  *But see* DE 109 at 12 (citing *Muniauction* in support of

its joint infringement theory).  AGIS's infringement case was truly a moving target.  First, it

argued that a "single user" somehow performs steps that require actions by multiple users.  When

this was questioned, it argued that the parent/child relationship led to infringement under the

"control or direction" standard of *Muniauction*.  DE 109 at 12.  As soon as the Court called *this*

theory into question, AGIS immediately retreated and stated that *Muniauction* "is not applicable

at all."  *Id.*

AGIS knew that its joint infringement theory was legally unsound but, nevertheless,

introduced it to the jury during closing arguments:

> We also know that two users doesn't necessarily mean two separate
> entities. Two fellow employees who are users forming a circle,
> they are part of the same entity. … You could. Now, if a single
> entity can have two users, why is Life360 spending all of its time
> talking about whether a single user does everything?

Ex. 11, at 27 (3/13/15 Trial Tr.).  AGIS gave an example of two employees forming a circle, even though direct infringement by Life360 employees had been removed from the jury instructions by the Court and was no longer part of the case.  AGIS acted in bad faith when it attempted to confuse the jury by suggesting, contrary to well-accepted legal principles, that multiple users—*e.g.*, friends, families, and other groups of people—can form a "single entity."

AGIS never attempted to introduce evidence, even from its own expert, to support this flawed theory.  *See Highmark v. Allcare Health Management Systems*, 706 F. Supp. 2d 713, 731 (N.D. Tex. 2010), aff'd *Highmark v. Allcare,* 134 S.Ct. 1744 (2014), (awarding fees where the patentee persisted with an infringement theory that was not supported "by its own expert's report and deposition testimony").  This is particularly troubling because AGIS sprang its theory on Life360 and the Court despite knowing it was legally unsound and factually deficient.  *See, e.g., ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368 at 1380 (finding exceptionality in part based on "ICU's misrepresentation of Federal Circuit authority"); *Home Gambling Network, Inc. v. Piche*, No. 2:05-CV-610, 2014 WL 2170600, at *1 (D. Nev. May 22, 2014) (awarding attorney's fees in part because several method steps were only performed outside of the United States and therefore could not possibly infringe under established Federal Circuit precedent).

### c.    AGIS's "unincorporated association" theory

In another effort to survive summary judgment, AGIS advanced the incomprehensible argument that each Life360 circle is an "unincorporated association" that can be sued in federal court under Fed. R. Civ. P. 17(b)(3)(A), somehow making each Life360 circle a direct infringer. AGIS could not identify any law supporting this theory because there is none—it was another

desperate attempt to further its case by misrepresenting the facts and the law. *See, e.g.,* Dkt. 125 (Life360's reply brief). This was not a good faith attempt by AGIS to extend existing law, it was another eleventh-hour attempt to evade the law.

### B.   AGIS' Theory on Claim 1 of the '954 Patent Contravened the Court's Markman Order and Was Objectively Baseless

Claim 1 of the '954 Patent requires accessing a website that enables a user to use the website to establish both public and private networks. '954 Patent, 12:25-30. The Court construed the term "private network" as "a network where access is limited" and the parties agreed to construe "public network" as "a network which anyone can access." DE 77. The only type of "network" that can be created using the Life360 website is one that involves sending personalized invitations to the intended members whereby only those in receipt of the invitation (as opposed to "anyone") can access the network. Ex. 17, at ¶150-155. AGIS never disputed that Life360 circles are invitation only. *See, e.g.,* Ex. 12, at 117:5-18 (AGIS's expert agreeing that Life360 circles require invitations to join); Ex. 8, at 110:8-11 (same during deposition).

AGIS's allegation that the Life360 app allows users to establish *both* public and private networks was baseless for the duration of this case and became especially egregious following claim construction. AGIS initially contended that a Life360 user creates a "public network" by inviting "everyone within an entire town or neighborhood," and a "private network" by inviting a "subset" of such individuals. Ex. 7, at ¶127. At trial, AGIS's technical expert testified that the difference between a public network and a private network could simply be how "close" or "immediate" those families were:

> I can create a network for close family members, immediate family, that would be a private network. I can create a network for friends and family that would be somewhat more public. I can create a network for the chess club or the cycling enthusiasts, that would be more public. I can create a network for anybody who lives in the neighborhood if they

14

> had a list of e-mail addresses to send invitations to. And that would be
> public.

Ex. 12, at 55:5-12 (3/10/15, Trial Tr.).

However, even assuming the scenarios AGIS put forward are possible, it is still unreasonable to conclude that a private, invitation-only Life360 circle is "a network which anyone can access" according to the construction for "public network."  Invitations necessarily make every circle "private" because access is "limited" to those that are specifically invited and accept.  Ex. 17, at ¶152.  AGIS's theory contradicts the claim constructions and all intrinsic evidence, and evades the Court's ruling that a "private network" "differentiates from a 'public network.'"  *See* DE 77, at 25; *see also Taurus IP, LLC v. Daimler Chrysler Corp.*, 2013 WL 4034384, *13-*16 (Fed. Cir. Aug. 9, 2013) (affirming award of attorney's fees for frivolous infringement claim where no support existed in the intrinsic evidence and there was an adverse claim construction).

AGIS's "public network" theory also contradicts its own statements and opinions about the common sense distinction between a public and private network.  For example, Malcolm Beyer, the CEO of AGIS and sole inventor of the '954 Patent, confirmed that a public network is not a private network.  Ex. 13, at 29:24-30:2 ("Q. Is a private network different than a public network?"; "A. Yes."); *see also* Ex. 14, at 72:19-73:5 (AGIS's claim construction expert agreeing that "a private network and a public network refer to two separate types of network[s]."). Sandel Blackwell, the President of AGIS, further confirmed this distinction at trial by stating:

> a private group is a group that I own, that I create, and that only
> people that can be in that group is if I invite them to be in that
> group. A public group is a group, is a list of groups that are
> published by the server so that people could go and join those
> groups without somebody specifically inviting them

15

Ex. 15, at 168:10-15; Ex. 19 (Hounddog FAQ); *see also* Ex. 9, 25:3-26:9 (testifying that a group requiring an invitation is considered "private").   Yet, for the purpose of accusing Life360 of infringing the '954 Patent, AGIS insisted that any Life360 circle could be public or private based on who an administrative user decides to invite.

At its core, AGIS's only argument was that the subjective intimacy of personal relationships determines whether a network is "public" or "private."   Ex. 12, at 55:5-12 ("I can create a network for close family members, immediate family, that would be a private network. I can create a network for friends and family that would be somewhat more public.").   Left with no reasonable argument, AGIS misrepresented the claim language to the jury when cross-examining Life360's expert Ed Tittel, not even permitting Mr. Tittel to see the actual claim:

> Q.   Now, Claim 1 of the '954 patent doesn't actually require any
> user to make both public and private networks, right?

Ex. 16, at 240:25-241:1.   In response, Mr. Tittel asked for clarification—whether the relevant conjunction was an "or"—to which AGIS falsely answered "[c]orrect."   *Id.* at 241:2-4.   AGIS knew that the claim requires at least the ability to define both public *and* private networks, but once again ignored its original theory to confuse and mislead the jury and the witness.

AGIS had no reasonable chance of succeeding on its claim that Life360 infringed claim 1 of the '954 Patent.   Proceeding on its argument that the invitation-only Life360 circles are both "public" and "private" networks despite contrary facts and claim constructions further supports a finding of exceptionality.

### C.    AGIS' Infringement Theory on Claim 4 of the '441 Patent Contravened the Court's Construction of "Common Interest Network"

AGIS originally proposed to construe the term "common interest network" as "a network in which the participants share a common interest or relationship."   In other words, it wanted a construction that could be satisfied based on the subjective state-of-mind of users.   AGIS lost,

and the Court instead adopted the majority of Life360's proposal: "<u>a network in which the inclusion of participants is *based* on a shared interest among the participants</u>." DE 77, at 36 (emphasis added). Yet AGIS's only infringement theory for this claim was that the *incidental* sharing of an interest by users constitutes a "common interest network." This clearly violates the Court's claim construction because inclusion in a Life360 circle is based entirely on receiving and accepting invitations and has nothing to do with the subjective interests of users. Claim 4 does not contemplate, let alone cover, mere incidentally shared interests.

If Life360 users with shared interests want to connect, they have to already know of each other and either create a circle, or accept an invitation to join an existing circle. Ex. 17, at ¶152. Thus, users would have to "match" their interests elsewhere and create or join invitation-only circles like everyone else. Dr. Carbonell provided an example of this:

> you can post on your website or Facebook page or some other relatively public place that I'm forming such a group, if you want to join me send me an e-mail.

3/10/15 Trial Tr., at 124:22-25. AGIS also ignored the language of claim 4 of the '441 Patent specifying that the composition of a common interest network is based on "every participant having *common interest data matching the common interest data* of the requesting participant." AGIS has never attempted to identify what "common interest data" is, or what performs the "matching," because it simply does not exist. It appears that "common interest data" is alleged to be a mental state of a Life360 user and does not relate to any actual "data" in the Life360 system.

AGIS had no reasonable chance of succeeding on its claim that Life360 infringed claim 4 of the '441 Patent, especially under the Court's claim construction. This infringement theory was unreasonable at least as of the date of the claim construction order.

### D.    AGIS Litigated this Case in Bad Faith

17

Even beyond AGIS's unreasonable infringement theories, AGIS's bad faith and vexatious conduct throughout the litigation adds to the totality of the circumstances that make this case exceptional.

One example of AGIS's many attempts to evade the law was demonstrated during trial when AGIS's lawyer misrepresented to the Court the requirements of contributory infringement, stating:

> Counsel made a mistake when he said that contributory infringement has an intent element. It absolutely does not. It has a knowledge of the patent element and the other element that Your Honor pointed out a few minutes ago in terms of not having substantial non-infringing uses.

3/12/15 Trial Tr., at 215:12-17.  This is incorrect and even ignores the plain statutory language of 35 U.S.C. § 271(c) which requires an accused contributory infringer to <u>know</u> that the accused instrumentality is "especially made or especially adapted for use in an infringement…and not a staple article or commodity of commerce suitable for substantial noninfringing use."  *See Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476, 488 (1964) ("§ 271 (c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing").

AGIS's bad faith was also demonstrated by its attempt to manufacture evidence concerning a competing product that supposedly practiced the patents-in-suit.  First, AGIS misrepresented that its LifeRing product practiced all of the patents-in-suit in its interrogatory responses served on November 21, 2014.  *See* Ex. 18, at Exhibit A (claim charts mapping the LifeRing product to all asserted patent claims).  These responses were accompanied by a signed verification of Malcolm Beyer, the CEO of AGIS.  *Id.*  But two days earlier during his deposition, Malcolm Beyer contradicted these responses when he testified that AGIS has never

18

practiced or implemented claim 1 of the '954 Patent or any claim of the '681 Patent.  Ex. 13 at 71:7-19 (admitting that AGIS never had an implementation of LifeRing that allowed administrators to change or update soft switches according to the '681 Patent); 89:17-20 (referring to claim 1 of the '954 Patent, stating "we didn't use the Web site for the function to define public or private peer-to-peer networks, each with its own symbology and soft switches").

In another attempt to prolong its threat of injunctive relief, AGIS launched a website for its supposedly competing "Hounddog" application literally days before trial that falsely claimed the app was available for download.  Ex. 15 at 161:18-162:2 (AGIS president Sandel Blackwell agreeing that the live "Hounddog" webpage says "available on the [P]lay store" but that it is "not a correct statement" because the app was "not released" yet).  Even though AGIS was apparently working on this software since 2005, it conveniently launched the webpage mere days before trial.  *See id.* at 116:24-117:5.

## V.    CONCLUSION

For the foregoing reasons, Life360 respectfully requests that the Court declare this case exceptional and require AGIS to reimburse it for its attorneys' fees, expert fees, and non-taxable expenses incurred in connection with this case.  At a minimum, the fees, expert fees, and non-taxable expenses incurred subsequent to the November 21, 2014 *Markman* Order, in which the system/device claims were found to be indefinite, should be awarded.

## CERTIFICATION UNDER LOCAL RULE 7.3(b)

The undersigned verifies that the facts as set forth in this motion are verified by the attached Declaration and are true and correct to the best of his knowledge and belief.  The undersigned certifies that a good faith effort to resolve issues by agreement occurred pursuant to

Local Rule 7.3(b) by providing a draft of the present motion and the accompanying materials on June 11, 2015, and meeting and conferring with AGIS on July 1, 2015 and again on July 7, 2015 to make a good faith attempt at resolving disputes concerning the entitlement to an award of fees and expenses and the amount of fees and expenses to be awarded.  No agreement was reached.

Dated: July 13, 2015                                    Respectfully Submitted,

                                                 /s/ Daniel J. Barsky
                                 Kent E. Baldauf, Jr. (PA I.D. No.: 70793)
                                 kbaldaufjr@webblaw.com
                                 Cecilia R. Dickson (PA I.D. No.: 89348)
                                 cdickson@webblaw.com
                                 Bryan P. Clark (PA I.D. No.: 205708)
                                 bclark@webblaw.com
                                 James J. Bosco, Jr. (PA I.D. No.: 203896)
                                 jbosco@webblaw.com
                                 Christian D. Ehret (PA I.D. No.: 311984)
                                 cehret@webblaw.com

                                 The Webb Law Firm
                                 One Gateway Center
                                 420 Ft. Duquesne Blvd., Suite 1200
                                 Pittsburgh, Pennsylvania
                                 Telephone: (412) 471-8815
                                 Facsimile: (412) 471-4049

                                 Eric C. Christu (Fla. Bar No. 434647)
                                 echristu@shutts.com
                                 Daniel J. Barsky (Fla. Bar No. 25713)
                                 dbarsky@shutts.com
                                 Shutts & Bowen LLP
                                 1100 CityPlace Tower
                                 525 Pkeechobee Boulevard
                                 West Palm Beach, FL 33401
                                 Telephone: (661) 650-8518
                                 Facsimile: (561) 822.5527

                                 *Counsel for Defendant LIFE360, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 13th day of July, 2015, I filed the foregoing document via CM/ECF

which caused a copy to be served via electronic mail to the following counsel of record:

Anne E. Li, Esq.
ali@kenyon.com
George E. Badenoch
gbadenoch@kenyon.com
Mark Hannemann, Esq.
mhannemann@kenyon.com
Matthew C. Berkowitz, Esq.
mberkowitz@kenyon.com
Thomas R. Makin, Esq.
tmakin@kenyon.com
Vincent J. Rubino, III, Esq.
vrubino@kenyon.com
Rose Cordero Prey, Esq.
rcordero@kenyon.com

**Kenyon & Kenyon, LLP**
One Broadway
New York, NY 10004-1007
212-425-7200

*s/   Daniel J. Barsky*
*Counsel for Defendant Life360, Inc.*