# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:14-cv-80651-DMM

ADVANCED GROUND INFORMATION
SYSTEMS, INC.,

                       Plaintiff.

      v.

LIFE360, INC.,

                       Defendant.

**PLAINTIFF ADVANCED GROUND INFORMATION SYSTEMS INC.'S OPPOSITION TO DEFENDANT LIFE360, INC.'S MOTION FOR AN AWARD OF <u>ATTORNEY FEES AND NON-TAXABLE EXPENSES</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 2

       A.    This Is Not an Exceptional Case ............................................................ 2

             1.    AGIS's Contentions That the Asserted Method Claims Were
                   Infringed By a Single User Were Objectively Reasonable ......... 4

             2.    AGIS's Contentions That the "Public Network" and "Common
                   Interest Network" Limitations Were Met Were Objectively
                   Reasonable and Consistent With the Court's Claim Constructions ........... 9

             3.    AGIS Did Not Litigate in Bad Faith ........................................ 12

       B.    Even If Life360 Were Entitled To Any Attorney Fees, Substantial Portions
             of the Amounts Sought By Life360 Are Unauthorized or Excessive ................. 16

       C.    Life360's Own Bad Acts Preclude an Award of Fees ........................... 18

III.   CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  Nos. 2009-1372, -1380, -1416, -1417, ___ F.3d ____,
  2015 U.S. App. LEXIS 14175 (Fed. Cir. Aug. 13, 2015)...............................13, 20

*Amsted Indus., Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994).........................................................................16, 17

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964)...........................................................................................14

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983)...........................................................................16

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..............................................................................................17

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015)....................................................................................3, 20

*Commil USA, LLC v. Cisco Sys., Inc.*,
  720 F.3d 1361 (Fed. Cir. 2013)............................................................................3

*Commonwealth Labs., Inc. v. Quintron Instrument Co.*,
  No. 14-20083, D.E. 98 (S.D. Fla. July 20, 2015) ...............................................4

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods.*,
  790 F.3d 1369 (Fed. Cir. 2015)........................................................................3, 9

*Hewlett-Packard Co. v. Bausch Lomb Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990)..........................................................................14

*Int'l Visual Corp. v. Crown Metal Mfg.*,
  991 F.32 768 (Fed. Cir. 1993)............................................................................10

*Intellect Wireless, Inc. v. T-Mobile USA, Inc.*,
  735 F. Supp. 2d 928 (N.D. Ill. 2010) ................................................................6, 8

*Invista North Am. S.A.R.L. v. M & G USA Corp.*,
  951 F. Supp. 2d 626 (D. Del. 2013)....................................................................14

*Life360, Inc. v. Advanced Ground Info. Sys., Inc.*,
  No. 4:15-cv-00151, D.E. 1 (N.D. Cal. Jan. 12, 2015) ......................................19

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988).................................................................................... 16, 17

*NXP B.V. v. Blackberry, Ltd.*,
58 F. Supp. 3d 1313 (M.D. Fla. 2014) .................................................................... 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)............................................................................................ 3, 18

*Odorstar Tech., LLC v. SMM Distrib., LLC*,
No. 13-cv-60136, D.E. 113 (S.D. Fla. Mar. 2, 2015) ............................................ 3

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004).............................................................................. 18

*SFA Sys., Inc. v. Newegg, Inc.*,
No. 14-1712, ___ F.3d ___, 2015 U.S. App. LEXIS 11892
(Fed. Cir. July 10, 2015) .................................................................................... passim

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010)............................................................................ 6, 8

*Stragent, LLC v. Intel Corp.*,
No. 6:11-cv-421, 2014 WL 6756304, (E.D. Tex. Aug. 6, 2014)........................... 9

*Trover Group, Inc. v. Dedicated Micros USA*,
No. 2:13-CV-1047-WCB, 2015 WL 4910875 (E.D. Tex. Aug. 17, 2015)............. 9

*Unisone Strategic IP, Inc. v. Life Techs. Corp.*,
No. 3:13-cv-1278-GPC-JMA, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013) ....... 14

*Woods v. Deangelo Marine Exhaust Inc.*,
No. 08-81579-Civ., 2010 WL 4116571 (S.D. Fla. Sept. 27, 2010),
*adopted at* 2010 WL 4102939 (S.D. Fla. Oct. 18, 2010)...................................... 17

**Statutes**

35 U.S.C. § 271(a) .................................................................................................. 8

35 U.S.C. § 271(c) .................................................................................................. 14

35 U.S.C. § 285...................................................................................................... 2, 16

**Rules**

Local Rule 7.3(a) .................................................................................................... 18

Local Rule 7.3(a)(4)................................................................................................ 18

Local Rule 7.3(a)(5)(C) ............................................................................................... 18

Local Rule 7.3(a)(6)..................................................................................................... 18

Pennsylvania Rule of Professional Conduct 1.5(b) .................................................... 18

## I.      INTRODUCTION

Life360 moves for an award of attorney fees and non-taxable expenses, primarily on the ground that AGIS should have known that there was no chance of proving infringement at trial, in part because the asserted method claims all require steps to be performed by "multiple actors," and in part because the Court's constructions of the claim terms "private network" and "common interest network" precluded infringement by Life360's invitation-only networks.   Therefore, according to Life360, even though the Court denied its motion for summary judgment and later denied its motion for JMOL, AGIS never should have taken the case to trial.

Life360's motion is without merit.  AGIS's infringement case was more than objectively reasonable, and AGIS litigated in good faith.  This is not an exceptional case, and there is no basis for an award of attorney fees.

First, Life360's argument that the asserted method claims required steps to be carried out by "multiple actors" is based on an overly restrictive and unreasonable reading of claim terms like "providing," "storing," "displaying," and "transmitting," which Life360 never asked for during the Markman proceedings, and which Life360 first revealed after AGIS's expert reports and then advanced in its motions for summary judgment and JMOL of non-infringement, which the Court denied.  Properly construed, none of the terms on which Life360 relies require steps to be performed by "multiple actors."   Indeed, Life360's argument on this point is nothing but a rehash of the summary judgment and JMOL motions it previously lost.

Second, Life360's argument that the Court's constructions of the terms "private network" in the '954 patent and "common interest network" in the '441 patent precluded infringement by any invitation-only network is based on a misreading of the Markman history and ruling.  During the Markman proceedings, Life360 proposed constructions for these terms that would have excluded invitation-only networks like Life360's, but the Court rejected Life360's proposed constructions and instead adopted constructions that did not exclude invitation-only networks.

Third, Life360's other arguments that AGIS litigated in bad faith are all untenable.  AGIS did not misrepresent the law of contributory infringement; Life360 did.  AGIS did not belatedly change its infringement position. It was Life360 that sprung a new interpretation of the claims

for the first time in its rebuttal expert report and summary judgment motion shortly before trial. AGIS did not try to deceive Life360's expert witness on cross examination.  And AGIS did not manufacture evidence or manipulate the timing of the launch of its "HoundDog" product.

Finally, if anyone should be charged with bad faith and vexatious litigation conduct it is Life360, not AGIS.  Since the outset of this case, Life360 has sought to intimidate AGIS and the inventor, Mr. Beyer, by sabotaging their business and reputations in the press, disparaging AGIS as a "troll," and launching websites like "stopagis.com" and "malcombeyer.com" that were openly calculated to harass and intimidate AGIS and its witnesses outside the litigation process. This misconduct alone is a sufficient reason to deny Life360's motion.

## II.    ARGUMENT

### A.    This Is Not an Exceptional Case

The Court observed at the outset of the trial that this is not an exceptional case under 35 U.S.C. § 285.  (Ex. 1, Pretrial Tr. at 6:2–5 ("I don't see how this could be an exceptional case, though, in terms of attorneys' fees on the other side . . . .").)  The Court made that statement the day after it denied Life360's motion for summary judgment of non-infringement, based on the finding that there were disputed fact issues for trial regarding whether a single actor carried out all the steps of the asserted method claims.  (D.E. 132 at 3–4.)

Nothing that happened at trial suddenly rendered this case exceptional.  To the contrary, the Court denied Life360's JMOL motion based on the same divided infringement argument, let the infringement issues go to the jury, and complimented counsel on both sides at the conclusion of the trial.  (Ex. 2, 3/11/15 Trial Tr. at 143:17–154:9; Ex. 3, 3/12/15 Trial Tr. at 220:9–225:2; Ex. 4, 3/13/15 Trial Tr. at 6:4–7:24, 65:16, 107:18–21; D.E. 157, ¶ 7.)  And because Life360 contended not only that no single actor carried out the predicate act of direct infringement by end users, but also that Life360 lacked the intent required to indirectly infringe, it is not possible to know for sure from the general verdict of non-infringement whether the jury agreed with

2

Life360's "multiple actors" argument and found no direct infringement by end users, or agreed with AGIS that there was direct infringement, but found that Life360 did not indirectly infringe.[1]

But even if Life360 did persuade the jury to adopt its position on the disputed fact question of whether a "single actor" carried out all the claimed steps, that does not make this an exceptional case or warrant a fees award, which cannot be used "as a penalty for failure to win a patent infringement suit." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014) (quotation omitted); *see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[F]ees are not awarded solely because one party's position did not prevail."); *Odorstar Tech., LLC v. SMM Distrib., LLC*, No. 13-cv-60136, D.E. 113 at 5 (S.D. Fla. Mar. 2, 2015) (Middlebrooks, J.) (citation omitted) (attached as Ex. 5).

To the contrary, "the Supreme Court [in *Octane*] made clear that it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *SFA Sys., Inc. v. Newegg, Inc.*, No. 14-1712, ___ F.3d ___, 2015 U.S. App. LEXIS 11892, at *9 (Fed. Cir. July 10, 2015). As explained in detail below, AGIS's infringement contentions were objectively reasonable and AGIS reasonably litigated in good faith. Therefore, this is not an "exceptional" case that "stands out from others," and there is no basis for an award of fees. *See, e.g.*, *NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1317 (M.D. Fla. 2014) (denying motion for attorney fees after court denied summary judgment of non-infringement and jury rendered verdict of no infringement and invalidity); *Odorstar*, No. 13-cv-60136, D.E. 113 (denying motion for attorney fees after court granted summary judgment of non-infringement because plaintiff's arguments were not so meritless as to stand out from other cases) (attached as Ex. 5); *Commonwealth Labs., Inc. v.*

---

[1] Life360 argued to the jury that it lacked the intent to indirectly infringe because it believed AGIS's patents are invalid and not infringed. (*See, e.g.*, Ex. 2, 3/11/15 Trial Tr. at 107:4–112:21; Ex. 4, 3/13/15 Trial Tr. at 61:12–23.) Life360's contention was based in part on then-binding precedent that a belief that a patent is invalid could negate the intent to induce infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368–69 (Fed. Cir. 2013). On May 26, 2015, two weeks after the Court entered judgment in this case (D.E. 171), the Supreme Court reversed that precedent, holding that a belief that a patent is invalid is not a defense to inducing infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928–30 (2015).

*Quintron Instrument Co.*, No. 14-20083, D.E. 98 (S.D. Fla. July 20, 2015) (recommending motion for attorney fees and costs be denied after finding that plaintiff pursued the action in good faith, the case was not exceptional, and fee shifting was unwarranted) (attached as Ex. 6).

1.      **AGIS's Contentions That the Asserted Method Claims Were Infringed By a Single User Were Objectively Reasonable**

Life360's argument that the method claims cannot be infringed because they all require steps to be performed by "multiple actors" on different phones is simply a repeat of its unsuccessful motions for summary judgment and JMOL. Life360 refuses to recognize that claim terms like "providing," "storing," "displaying" and "transmitting" are everyday English words that can be read in context to cover the actions of an administrative user who arranges and causes each of these claim steps to occur. The terms do not have to be read, and should not be read, to include detailed software implementing steps on different phones that are not part of the claim.

For example, the word "providing" is an everyday English word that can refer to different levels of detail in furnishing products, supplies, components or software depending on the context. As AGIS argued in its summary judgment opposition, a person can "provide" theater tickets by purchasing them online and arranging for them to be available at a "will call" window for pick up by an invited guest. (D.E. 109 at 7.) It is perfectly normal English usage to say that the purchaser is "providing" the tickets, even though in a different context one might also say that the theater company, the operator of the ticket printing machine, or the attendant at the "will call" window is also "providing" the tickets. The same can be said with respect to a supplier or distributor of components that provides them by arranging for shipment to a factory. Depending on the context, the supplier or distributor is "providing" the components, but so is the manufacturer of the components and/or the trucking company that delivers them.

Words like "storing," "displaying" and "transmitting" are similar. A person can store furniture by renting space from a storage facility and calling a moving company to deliver the furniture to that facility. No one would question that such a person is "storing" his furniture, but depending upon the context, one could also say the moving company or the storage facility operator are also "storing" the furniture. Similarly, a person can arrange for an auditorium and

projector to "display" slides.  Depending on the context, both he and the projector operator could be described as "displaying" the slides.  As a final example, one could also place a telephone call or arrange for transmission of a message and be described as placing the call or "transmitting" the message.  No reasonable person would insist that it is the telephone company and not the caller that is placing the call, or that it is only the owner of the messaging software that is "transmitting" the message, unless a specific context demanded it.

Turning to the specific claim terms relied upon by Life360, AGIS submits that its reading of the terms is not only objectively reasonable, but far more reasonable than Life360's reading, which would make the claims impossible to infringe.  The fact that Life360 may have persuaded the jury that the terms should be read restrictively to preclude infringement does not make this an exceptional case.

Specifically, with respect to the claimed steps of "providing" software to each member of the network, AGIS contended at trial that a single user, specifically the administrative user, provided the Life360 software by sending an invitation to join a circle.  (*See, e.g.*, Ex. 7, 3/10/15 Trial Tr. at 31:10–32:18, 43:7–18, 80:14–87:6, 89:22–90:7.)  It was undisputed that the invitation sent by the administrative user includes a link for the invitee to download the Life360 app or, if they already had the app, to open it.  *Id.*  Even Life360's expert, Mr. Tittel, agreed that the administrative user provides an invitee a link to download the software.  (Ex. 2, 3/11/15 Trial Tr. at 236:7–25.)  In the same way that an individual who purchases theater tickets provides those tickets to a friend by ordering them online and sending the friend an email notifying her that she should pick up the tickets at the "will call" window, the administrative user "provides" the software by identifying the location where a user can download it.

Life360 argues that because each user downloads the Life360 software onto her own phone, the administrative user cannot be "providing" other users with the software.  (D.E. 190 at 8–9.)  But the claim language recites "providing," not "downloading."  Life360 never sought a limiting construction of the term "providing," and the Court did not construe this term.  And, while "providing" may include "downloading," (in fact, that is how the administrative user provides the software to himself), the ordinary meaning of "providing" also encompasses the

sense of "providing" described in the theater ticket example above. Further, given that sending the invitation including the link constitutes "providing," any additional steps that Life360 argues must be taken by the invitee (for example, downloading and installing the software) are irrelevant because they are not recited in the claims. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1330–31 (Fed. Cir. 2010) (evidence that other parties "forwarded" and "downloaded" did not mean there was divided infringement because the claim did not recite those steps); *Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F. Supp. 2d 928, 934 (N.D. Ill. 2010) ("[T]he end user's conduct, while related to the claim, was not described in the claim, and therefore did not violate the single-actor requirement.").

AGIS also contended at trial that sending an invitation accomplished the claimed steps of "providing" the databases and phone numbers and "storing" each member's phone number on each phone. (Ex. 7, 3/10/15 Trial Tr. at 42:16–43:5, 49:5–51:20.) The evidence showed that when an administrative user sends an invitation to someone to join his circle, the invitee's phone number is sent to each group member. (*Id.* at 42:16–43:5, 79:7–81:16, 84:20–85:6, 85:8–87:6, 100:24–101:21.)[2] When the invitee accepts the invitation, the contents of a database related to that circle, including the phone numbers, are automatically stored on her phone—the invitee cannot decide to store only some (or none) of the phone numbers of the circle members. (*See* Ex. 7, 3/10/15 Trial Tr. at 42:21–43:1 (All of the associated information "is transmitted via the server to all of the other members of that circle.").) Even Life360's expert, Mr. Tittel, admitted that the phone numbers are distributed to everyone's phone in this manner; he merely disputed that this constituted the administrative user "providing and storing" them. (Ex. 2, 3/11/15 Trial Tr. at 210:8–211:8.) But, in the same way that someone can provide and store furniture in an offsite storage unit by arranging for movers to pick up the furniture and deliver it to the offsite storage location, the administrative user "provided" and "stored" the phone numbers in the other

---

[2] The other participants in the group have no control over whether the new invitee's information appears on their phones, and this occurs even *before* the invitee accepts the invitation and only as a direct result of the administrative user's invitation. (Ex. 7, 3/10/15 Trial Tr. at 86:3–12.)

participants' phones by sending the invitation. Mr. Tittel, in discussing texting technology, also admitted to this type of "storing." *Id.* at 235:7–25.

Life360 argued at trial that the "storing" of the phone numbers occurred "on the server" and *only* on the server—not on the phone. *Id.* at 157:23–158:1. This argument was contrary to the evidence, and only meant to confuse the jury. Life360's expert even admitted that the phone numbers are stored on the phones, and only disagreed as to who was responsible for the step. *Id.* at 211:5–8 ("And that's when the information gets stored and it gets stored on the cellphone at the other end of the connection, which has nothing to do with the original user in the first place."), 235:21–25.[3]

Life360 also asserts in its motion that "AGIS (incorrectly) asserted that the method steps are performed 'automatically' on the other users' phone as a result of the first user sending these other users an invitation." (D.E. 190 at 3, 10.) Life360 ignores at least the case where the invitee already has the Life360 software installed and, upon clicking "accept," receives the software components (a database and code) to enable communication with that particular circle. (Ex. 7, 3/10/15 Trial Tr. at 90:17–91:7.) In this scenario, the "downloading" and "storing" is automatically achieved upon clicking the "accept" link in the invitation to join a new circle. AGIS never argued that anything else was "automatic" as a result of the link.

With respect to the claimed steps of "displaying" each member's symbol on each phone, AGIS contended that the administrative user both (1) used the software to display the map with the symbols corresponding to the locations of the circle members on his own phone, and (2) moved around with his phone such that his symbol would continuously regenerate and display on the other circle members' maps. (*E.g.*, Ex. 7, 3/10/15 Trial Tr. at 45:9–46:3; *see also* Ex. 2, 3/11/15 Trial Tr. at 235:11–25 (Life360's expert agreeing that one could display an image on another's phone).) In the same way that a presenter can set up a WebEx and rent a projector at a

---

[3] This distinction may have been critical because the jury asked the following question: "Does the act of something showing up on a display screen constitute storage in memory?" (D.E. 165.) Despite its expert's admission, Life360 refused to allow the Court to answer this question in the affirmative. (Ex. 4, 3/13/15 Trial Tr. at 100:7–102:9.) As a result, it appears that the jury likely was confused by Life360 as to whether anything was stored on the phones at all.

conference to display slides remotely, the administrative user who created a circle caused the Life360 software to display symbols or location data on each phone.

With respect to the claimed steps of "transmitting" map information to each phone, AGIS contended that this step was part of the automatic processes put into motion by the administrative user's distribution and use of the Life360 app. (Ex. 7, 3/10/15 Trial Tr. at 53:1–25.) Life360's argument that this and other steps are not performed by the administrative user because they require actions by software or third-party servers, (*e.g.*, D.E. 190 at 7–8), should be rejected because any steps carried out by a server or software must be attributed to the person using the server or software, which in this case is the administrative user. *See SiRF Tech.*, 601 F.3d at 1331 (finding that SiRF infringed when its devices and software dictated the performance of certain steps); *see also IntellectWireless*, 735 F. Supp. 2d at 938–39 ("The performance of certain steps of the method claims by software on wireless devices that defendants provide to their subscribers does not prevent the claims from being satisfied by the defendant's conduct."). A person (or a single entity, *e.g.*, a company) cannot avoid infringement of a method claim by arguing that software carried out a claimed step. Section 271(a) provides that "whoever" "uses" a "patented invention" infringes the patent. 35 U.S.C. § 271(a). Thus, any action taken by a server or software (or any machine for that matter) should be imputed or attributed to the person (or entity) who caused the server or software to take the action. *See SiRF Tech.*, 601 F.3d at 1331; *see also Intellect Wireless*, 735 F. Supp. 2d at 938–39.

In sum, AGIS's contention that the administrative user carried out all of the claimed steps was amply supported by the evidence, including the testimony of Life360's own expert, and was more than objectively reasonable. Life360's divided infringement arguments are based on an unduly narrow interpretation of everyday English words like "providing." Life360's fees motion also merely rehashes the arguments that the Court did not accept when it denied summary judgment and JMOL on the ground that there were disputed fact issues that a reasonable jury could decide in AGIS's favor. (D.E. 132 at 3–4; Ex. 2, 3/11/15 Trial Tr. at 143:17–154:9; Ex. 3, 3/12/15 Trial Tr. at 220:9–225:2; Ex. 4, 3/13/15 Trial Tr. at 6:4–7:24; D.E. 157, ¶ 7.) The Court need not revisit these prior rulings in deciding the fees motion. *See SFA Sys.*, 2015 U.S. App.

LEXIS 11892, at *10–11 ("Where, as here, a party's motion for fees does no more than refer the court back to its previous rulings, the district court has no obligation to reconsider or re-explain its prior rulings."); *see also Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 4910875, at *3 (E.D. Tex. Aug. 17, 2015) ("[I]t is inappropriate for proceedings on a fee application to turn into a second trial . . . on the merits of the case.").

2.      **AGIS's Contentions That the "Public Network" and "Common Interest Network" Limitations Were Met Were Objectively Reasonable and Consistent With the Court's Claim Constructions**

Life360 also argues that AGIS's infringement allegations based on the '954 and '441 patents were "particularly egregious after claim construction foreclosed any possible relief as to these patents." (D.E. 190 at 2.) Life360's hyperbole does not withstand scrutiny. Life360 never sought summary judgment or JMOL on either of these grounds that it now contends "foreclosed" a finding of infringement.[4] This fact alone demonstrates that AGIS's allegations were not "egregious," as Life360 now belatedly contends. *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) ("[D]espite the alleged implausibility of Stragent's position, Intel never sought summary judgment of non-infringement on the basis of the limitation at issue. This suggests that Intel did not always view Stragent's infringement position as frivolous."); *see also Gaymar*, 790 F.3d at 1372 ("The [district] court found that CSZ had failed to establish . . . that Gaymar's litigation position was objectively baseless, relying on the fact that CSZ could have but did not move for summary judgment . . . suggesting that 'this case was closer than CSZ would now have this court believe.'").

More seriously, however, it is Life360, not AGIS, that is ignoring the Court's Markman rulings. With respect to the public and private network terms in the '954 patent, Life360 proposed a construction that arguably would have precluded infringement by any invitation-only network like Life360's, but the Court rejected that proposal. Specifically, both parties agreed

---

[4] Not only did Life360 not seek summary judgment on either of these grounds, but it did not even respond when AGIS asked Life360 to explain its assertion before expert discovery that the Markman decision defeated AGIS's infringement allegations under the '954 and '441 patents (even though the Court had rejected Life360's proposed constructions). (Ex. 8, 12/9/2014 Letter from Clark to Rubino; Ex. 9, 12/10/2014 Letter from Rubino to Clark.)

9

that a "public network" should be construed as "a network which anyone can access." (D.E. 45 at 2.)  Moreover, both parties agreed that the terms "public network" and "private network" had to be differentiated, *i.e.*, they could not be construed to mean the same thing.  *Id.* at 3.  The difference in the parties' positions was that Life360 proposed differentiating the two terms based on whether or not an invitation was effectively required to join the network.  Life360 proposed that the term "private network" be defined to mean "a network where access is limited to those having a password and/or a particular phone number," (D.E. 45-1 at 5), *i.e.*, one would have to be invited to know the required password and/or particular phone number.  If the Court had adopted Life360's proposal, Life360 could have argued that the terms "public network" and "private network" were differentiated based on whether there was a requirement for an invitation conveying a password for a particular phone number, and because all of Life360's networks required an invitation to join, the claim requirement for a "public network" could not be met.

But the Court did not adopt Life360's proposal.  Instead, the Court adopted AGIS's proposal that a "private network" was a "network where access was limited." (*Id.*; D.E. 77 at 24–25.)  Thus, AGIS's interpretation of the claim language—that a network is either public or private based on who was invited—is an accurate and reasonable interpretation under the Court's construction.  Life360's overly restrictive interpretation imposes additional limitations on the claim language, which the Court expressly rejected in its Markman decision.  (D.E. 190 at 14–15; D.E. 77 at 24–25.)  Once again, the Court need not revisit this prior ruling in deciding Life360's fees motion.  *See SFA Sys.*, 2015 U.S. App. LEXIS 11892, at *10–11.[5]

Life360 tries to support its arguments regarding public and private networks by arguing that AGIS tried to deceive Life360's expert witness regarding whether the claim language stated "public <u>and</u> private" or "public <u>or</u> private." (D.E. 190 at 16.)  Life360's argument is incorrect.  In the first place, the claim language in question contains both phrases.  The limitation states:

---

[5] Life360 relies on testimony from Mr. Blackwell regarding AGIS's LifeRing product, but this testimony about AGIS's product is not relevant to, and does not limit, the meaning of the claim terms in AGIS's patent, or suggest that a "private network" should be limited to only invitation-based groups.  *Int'l Visual Corp. v. Crown Metal Mfg.*, 991 F.32 768, 771–72 (Fed. Cir. 1993) (finding erroneous a claim construction that was based on a commercial embodiment).

> accessing with a remote network server from a system website for the purpose of establishing <u>either public or private</u> networks that can then enable those who have accessed the website the ability to define <u>public and private</u> peer to peer, networks each with its own symbols and soft switches

(Ex. 10, '954 patent, 12:25–30 (emphasis added).)  Also, when AGIS's counsel asked Life360's expert, Mr. Tittle, whether the claim "actually require[d] any user to make both public and private networks," he responded that he thought the conjunction was "or," indicating that he was not deceived or confused in any way, even though the claim language contained both phrases. (Ex. 2, 3/11/15 Trial Tr. at 240:25–241:2.)  Life360 did not object to the line of questioning because there was no misrepresentation.  The focus of the questioning was not to confuse Mr. Tittel, but rather to show that infringement merely required that a user *had the ability* to make public or private networks, not that any user *had to have done so*.  *Id.* at 240:25–241:5.

Turning to the term "common interest network" in the '441 patent, again it is Life360, not AGIS, that ignores the Court's claim construction.  Life360 proposed a construction that would have required that a "common interest network" not just include participants with a shared interest, but also that the shared interest could not be based on the identity of the participants. Specifically, Life360 proposed that the term be construed to mean:

> a network in which the inclusion of participants is based on a shared interest among the participants rather than the identity of the participants

(D.E. 77 at 35.)  If the Court had adopted this construction, Life360 could have argued that its networks could not infringe this term because they all required an invitation, which effectively requires that the invitee be identified.

But the Court did not adopt Life360's proposal.  Instead, it deleted the language Life360 proposed to add, "rather than the identity of the participants."  *Id.*  The Court's construction merely required the inclusion of participants to be based on a shared interest, and did not exclude networks based on identity as Life360 had proposed.  This permitted AGIS to argue that the "common interest network" was met by use of the Life360 app because the administrative user forms a group based on a shared interest, namely, the identity of the participants (*e.g.*, caregivers)—the very construction the Court permitted.  *Id.*  Life360 is now asking the Court to

revisit its claim construction, which is unwarranted.  *See SFA Sys.*, 2015 U.S. App. LEXIS 11892, at *10–11.

Life360's argument also contravenes the Court's construction because it attempts to impose two additional restrictions on the claim language, namely, that the inclusion of participants in a common interest network cannot be based on (1) preexisting knowledge of the users or (2) their acceptance of an invitation.  Life360 argues that there can be no infringement because Life360 users "have to already know of each other" if they want to connect and "inclusion in a Life360 circle is based entirely on receiving and accepting invitations," which Life360 asserts somehow precludes inclusion in a common interest network based on a shared interest.  (D.E. 190 at 17.)  Life360's argument should be rejected because it imposes additional limitations on the claims that the Court already has correctly decided are unwarranted.[6]

### 3.        AGIS Did Not Litigate in Bad Faith

Life360 also argues that throughout the litigation AGIS made misrepresentations and vexatiously prosecuted this case.  (D.E. 190 at 17–19.)  Life360 is wrong.

Life360 confuses AGIS's single user/entity contentions with joint infringement and accuses AGIS of changing its infringement theories after contentions were exchanged.  (D.E. 190 at 2–3, 9–14.)  AGIS has always been clear that it was not alleging that two separate actors are jointly infringing.  (*E.g.*, Ex. 11, AGIS's Amended Infringement Contentions, at 2 n.1; D.E. 109 at 3–10; Ex. 7, 3/10/15 Trial Tr. at 40:16–66:20; Ex. 4, 3/13/15 Trial Tr. at 24:10–28:3.)  AGIS's primary position has always been that Life360 induced infringement of the method claims by a single user.  *Id.*  AGIS did not amend its contentions to add, and did not argue at trial, a theory of joint direct infringement, because it was not accusing independent actors jointly of infringing,

---

[6]  Life360 also mischaracterizes AGIS's contentions when it argues that AGIS's only infringement position was based on the subjective state-of-mind of users and their incidental sharing of an interest.  (D.E. 190 at 16–17.)  AGIS's contention was never that an *incidental* sharing of an interest somehow transforms a network into a common interest network.  (*See generally*, Ex. 12, AGIS's Amended Infringement Contentions, Ex. D at 13–15.)  Rather, AGIS demonstrated that an administrative user formed a common interest network by inviting other participants who shared a common interest.  (*Id.*; Ex. 7, 3/10/15 Trial Tr. at 60:6–61:16; 123:22–125:17.)  This contention was an accurate and reasonable application of the Court's construction.

and AGIS explained the distinction between the allegations in this case from those in *Muniauction*. (*See* Ex. 2, 3/11/15 Trial Tr. at 275:3–276:2, 278:9–15.) AGIS's infringement argument was that a single user (*e.g.*, the administrative user) or a single entity (*e.g.*, Life360) directly infringed the claims. (*E.g.*, Ex. 4, 3/13/15 Trial Tr. at 24:10–28:3.)[7]

Despite AGIS's attempts to discover Life360's non-infringement contentions during discovery, the first time Life360 surfaced its "multiple actors" argument was in its rebuttal expert report on January 16, 2015, less than two months before trial. (*E.g.*, Ex. 12, Tittel Non-Infringement Expert Report at 37–38, 44, 55, 77–78.) Then, on February 6, 2015, Life360 filed its summary judgment motion arguing that there is no direct infringement by a "single actor." (D.E. 101.) In response, AGIS explained that the administrative user carried out all of the method steps, and also explained that a Life360 circle of family members or others (*i.e.*, an unincorporated group formed for a common purpose)[8] could also be considered a single infringing entity. (D.E. 109 at 12–13.) But that secondary explanation regarding a Life360 circle simply set forth additional reasons why Life360's new argument should be rejected, and it was consistent with AGIS's infringement contentions because the direct infringer was still a single user or entity and not two independent actors. After the Court denied Life360's summary judgment motion, Life360 moved *in limine* to preclude AGIS from presenting these theories at trial as untimely, (D.E. 111 at 8–10), and the Court resolved this issue in AGIS's favor before

---

[7] AGIS noted throughout the litigation that the law of joint infringement was under review, and that AGIS reserved the right to allege joint infringement if the law on this issue were to change. (*E.g.*, Ex. 11, AGIS's Amended Infringement Contentions, at 2 n.1.) The law on joint infringement did change in AGIS's favor, but only after trial. On August 13, 2015, the en banc Federal Circuit relaxed the standard for joint infringement (and overruled the prior precedent) to now permit a finding of infringement not only where one entity hires an agent or contracts with another to carry out the steps, but also where the entity forms a "joint enterprise" with another or "conditions participation [by another] in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, Nos. 2009-1372, -1380, -1416, -1417, ___ F.3d ____, 2015 U.S. App. LEXIS 14175, at *3–7 (Fed. Cir. Aug. 13, 2015).

[8] *Cf. Akamai*, 2015 U.S. App. LEXIS 14175 at *5 ("[W]here two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor.") (citation omitted).

13

trial.  (Ex. 1, Pretrial Tr. at 38:17–21; *see also* D.E. 157.)  Finally, when Life360 continued to object to AGIS's infringement theory during trial, the Court addressed the objections, denied Life360's JMOL motion, and allowed the jury to decide the infringement issue.  (*See, e.g.*, Ex. 3, 3/12/15 Trial Tr. at 220:9–225:2.)  In sum, this is another argument in Life360's fees motion that rehashes issues that the Court has already decided, and which provides no basis for an award of fees.  *See SFA Sys.*, 2015 U.S. App. LEXIS 11892, at *10–11.

Life360 also argues that AGIS misrepresented the law when AGIS told the Court during trial that contributory infringement requires knowledge of infringement, not intent to cause infringement.  (D.E. 190 at 18.)  But AGIS's statement was not only correct, but necessary to point out the mistake in Life360's counsel's contrary representation to the Court.  (Ex. 3, 3/12/15 Trial Tr. at 214:5–215:20.)  As it did at trial, Life360 in its motion conflates the knowledge required for contributory infringement with the intent required for inducing infringement. Life360 relies on *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964), but the quoted passage only shows that knowledge is an element of § 271(c)—not intent.  *Id.* at 488 ("§ 271(c) does require a showing that the alleged contributory infringer *knew* that the combination for which his component was especially designed was both patented and infringing.") (emphasis added).  Long-standing precedent since *Aro* has held that contributory infringement requires the defendant to know that his actions cause infringement, but does not require him to have intended that result.  *See, e.g.*, *Hewlett-Packard Co. v. Bausch Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("Section 271(c) . . . made clear that only proof of a defendant's knowledge, not intent, that his activity cause infringement was necessary to establish contributory infringement."); *Invista North Am. S.A.R.L. v. M & G USA Corp.*, 951 F. Supp. 2d 626, 646 n.12 (D. Del. 2013) ("Intent to cause infringement is not a requirement of contributory infringement under 35 U.S.C. § 271(c)."); *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, No. 3:13-cv-1278-GPC-JMA, 2013 WL 5729487, at *4 (S.D. Cal. Oct. 22, 2013) ("The Court agrees with Plaintiff that, unlike a claim for induced infringement, a claim for contributory infringement does not require a showing of specific intent to cause infringement.").  Last, the jury instruction

on contributory infringement, to which Life360 agreed, reflected this precedent by requiring knowledge, not intent.  (D.E. 164 at 14; Ex. 4, 3/13/15 Trial Tr. at 83:12–84:7.)

Life360 also accuses AGIS of manufacturing evidence concerning a competing AGIS product that practiced the patents-in-suit.  (D.E. 190 at 18–19.)  As a threshold matter, AGIS conceded during fact discovery that its LifeRing product does not compete with Life360.  (Ex. 13, Beyer Dep. (11/20/2014) at 56:1–3.)  Moreover, Life360's argument that LifeRing does not practice the patents is solely based on an obvious mistake in Mr. Beyer's deposition testimony that is taken out of context.  Mr. Beyer's mistaken recollection at his deposition does not even remotely establish that AGIS manufactured evidence concerning a product that practiced the patents.  While Mr. Beyer is the inventor, Mr. Blackwell was the lead engineer and programmer of LifeRing who actually implemented the features of AGIS's patents in the product, and he created a chart detailing when he incorporated certain features into the LifeRing source code.  (Ex. 14, PTX-387; *see, e.g.*, Ex. 15, Blackwell Dep. at 77:13–78:2.)  That detailed chart, Mr. Blackwell's testimony, and AGIS's business records are the best evidence that LifeRing practices the AGIS patents—not two excerpts from Mr. Beyer's deposition testimony, where he had nothing but claim language and memory from which to answer.

Last, Life360 points to the timing of AGIS's launch of its competing HoundDog application and website as evidence that AGIS supposedly litigated in bad faith.  (D.E. 190 at 19.)  Life360 is correct that AGIS had been working on a civilian version of its software since 2005.  (*See* Ex. 16, 3/9/15 Trial Tr. at 147:2–19; Ex. 17, PTX-579.)  But Life360 is incorrect that AGIS manipulated the timing of the HoundDog release.  AGIS made a business decision to refocus on the creation of a civilian application, and the schedule created by Mr. Blackwell in December 2013 for this purpose—months before filing the complaint against Life360— estimated a completion date of January, 2015.  (*See* Ex. 16, 3/9/15 Trial Tr. at 151:1–18; Ex. 18, PTX-636.).  The development of HoundDog had nothing to do with Life360.

Life360 points to the "live" HoundDog website as evidence of bad faith.  (D.E. 190 at 19.)  But at the time of trial, the HoundDog website was under construction, not publicly released, and only available to those who had the exact web address—the public could not have

found it via Google (or any other search engine) even if they had known to search "HoundDog." (Ex. 16, 3/9/15 Trial Tr. at 164:22–165:2.)  In every practical sense, the HoundDog website was private.  Any statement on the pre-publication website that HoundDog was available on the Google Play Store was not a misrepresentation because HoundDog was then available for beta testing.  *Id.* at 165:5–166:1.  Moreover, counsel for AGIS made clear at the pretrial conference that "[w]e really don't intend to produce or present any details about this product," (Ex. 1, Pretrial Tr. at 41:19–20), and the Court agreed with the limited use of this evidence at trial to rebut any negative inference from Life360 about AGIS's business, *id.* at 43:17–20.   The evidence was unrelated to the amount of damages sought by AGIS.

In sum, AGIS did not litigate in bad faith or vexatiously prosecute this case.  AGIS (and its counsel) litigated this case in good faith, advancing only reasonable contentions supported by the evidence and the law.   Life360's arguments that AGIS's conduct renders this case exceptional are meritless.

### B.   Even If Life360 Were Entitled To Any Attorney Fees, Substantial Portions of the Amounts Sought By Life360 Are Unauthorized or Excessive

AGIS disputes that this is an exceptional case and that Life360 is entitled to recover any attorney fees and non-taxable expenses at all.  But even if this were an exceptional case and Life360 could recover fees, a substantial fraction of the amounts that Life360 seeks are not authorized under 35 U.S.C. § 285, or are excessive and beyond any attempt of Life360 to justify.

First, Life360 seeks to recover expert witness fees in the amount of $335,920.33.  (D.E. 191-1 at 7–9.)  But 35 U.S.C. § 285 only authorizes a court to award "reasonable attorney fees," not expert witness fees.  *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377–79 (Fed. Cir. 1994).[9]  A court may—in very exceptional circumstances—award expert witness fees

---

[9] In arguing that it should recover expert fees under section 285, Life360 relies on *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988), and *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983).  (D.E. 190 at 3–4.)  But any notion that section 285 permits an award of expert fees was eliminated by the Federal Circuit in *Amsted*.  23 F.3d at 376 ("In this case, this court faces the issue of whether 35 U.S.C. § 285 provides the explicit authority *Crawford Fitting* requires for an award of expert witness fees above the limit in 28 U.S.C. § 1821(b).  This court holds that it does not.").

under its inherent power.  *Id.* at 378–79.  But a case must go "sufficiently beyond 'exceptional' within the meaning of section 285 to justify an award of expert fees as a sanction under the court's inherent power."  *Id.*; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (requiring a finding of fraud or abuse of the judicial process before a trial court can invoke sanctioning power to impose expenses such as expert witness fees).

Life360 cannot, and has not even tried to, meet the higher burden of proving the fraud or bad faith required to justify awarding expert witness fees as a sanction against AGIS under the Court's inherent power.  *See, e.g.*, *Woods v. Deangelo Marine Exhaust Inc.*, No. 08-81579-Civ., 2010 WL 4116571, at *15 (S.D. Fla. Sept. 27, 2010), *adopted at* 2010 WL 4102939 (S.D. Fla. Oct. 18, 2010) (denying an award of expert witness fees under § 285 and noting that the Federal Circuit has retreated from the position that an attorney fees award made pursuant to § 285 may include expert witness fees); *Amsted*, 23 F.3d at 375–77, 379 (finding that the trial court abused its discretion in sanctioning defendant by awarding expert witness fees).[10]

Life360 also seeks an excessive amount of attorney fees and expenses well beyond the periods for which it even attempts to present any justification.  Life360 has requested that the Court award it fees and expenses for services rendered from July 16, 2014 to April 30, 2015.  (D.E. 191-1 at 1.)  Yet Life360 makes no effort to suggest that AGIS's case was unreasonable before the Court issued its Markman decision on November 21, 2014.  Prior to that date, the system claims were still in the case, and Life360 admits that its motion is only directed to the method claims.  (D.E. 190 at 1 n.1, 6 n.4.)  Moreover, the trial concluded on March 13, 2015, when the jury returned its verdict in favor of Life360, thereby eliminating any need for Life360 to prepare any post-trial motions.  Therefore, even if Life360 were entitled to any attorney fees, the amounts sought for the more than six months prior to the Markman decision and the more than one month after trial are excessive and unjustified.

---

[10] Life360 also seeks recovery of prejudgment interest on any award of fees, but for the same reasons explained above, it cannot, and has not even tried to, establish the required bad faith or other exceptional circumstances.  *See Mathis*, 857 F.2d at 760 (holding that a district court need not award prejudgment interest on a § 285 award but may exercise its discretion in cases of "bad faith or other exceptional circumstances").

Life360's motion also failed to comply with Local Rule 7.3(a) in several respects. First, Life360 did not provide lead counsel's invoices, as required by Local Rule 7.3(a)(6). Second, the motion does not include "a description of the tasks done during [the] hours" expended by each timekeeper, as required by Local Rule 7.3(a)(5)(C). Although Exhibit B to Mr. Baldauf's declaration (D.E. 191-2) includes a list of daily time entries by his firm's lawyers, any description of the tasks performed during those hours has been redacted. Third, Life360 did not provide the terms of its fee agreement, as required by Local Rule 7.3(a)(4),[11] so it is unclear what discounts, caps, reductions, or other fee arrangements Life360 had made with its counsel. These failures to comply with the local rule, together with the apparent inconsistencies in the papers that were submitted (for example, inconsistencies between the rates stated in Ex. A and the rates apparently charged per Ex. B)[12] make it impossible to verify Life360's request.

### C.   Life360's Own Bad Acts Preclude an Award of Fees

An award of attorney fees is at the discretion of the Court, which must consider the totality of circumstances. *OctaneFitness*, 134 S. Ct. at 1751. Even if this were an exceptional case and Life360 could recover fees, any recovery should be precluded because Life360 is guilty of litigating in bad faith and of vexatious conduct. *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) (affirming denial of attorney fees as within the district court's discretion considering the movant's bad "behavior to which it subjected others").[13]

---

[11] *cf.* Pennsylvania Rule of Professional Conduct 1.5(b), which requires a written fee agreement.

[12] The amount claimed by Life360 for work by lead counsel's firm in Exhibit A ($937,444.50) does not match the billed total listed in Exhibit B ($920,045). Moreover, the rates described in the text of Mr. Baldauf's declaration (D.E. 191) and in Exhibit A (D.E. 191-1) are not consistent with the time entries listed in Exhibit B (D.E. 191-2). For example, Exhibit A lists Mr. Baldauf's hourly rate as $430 and $440, but Exhibit B shows his billed hourly rate to be $400 and $410 (see the first entry for 0.5 hours and $200, corresponding to an hourly rate of $400 (D.E. 191-2 at 2), and the last entry for 1.75 hours and $717.50, corresponding to an hourly rate of $410 (*id.* at 32)).

[13] Life360 repeats the canard that "AGIS sent Life360 a letter demanding that, within three days, Life360 pay an unstated amount of money or shut down its service," and that "[t]rue to its threat, AGIS filed suit against Life360 less than 78 hours later." (D.E. 190 at 2.) AGIS's letter merely stated that it was "willing to discuss royalty-bearing license terms" for Life360's use of AGIS's patents, that "in the absence of a license, Life360 and its customers must cease and desist from

Since the outset of this case, Life360 and its CEO, Chris Hulls, have sought to intimidate AGIS and Mr. Beyer by sabotaging their business and reputations.  Life360 first disparaged AGIS when Life360 called AGIS a "troll," and when Life360 described AGIS as a "failing" company almost immediately after AGIS filed its complaint.  (*See, e.g.*, Ex. 21, PTX-328; Ex. 22, PTX-326.)  Life360 went on to launch the websites "stopagis.com" and "malcolmbeyer.com," both of which were admittedly used for "public shaming" and to bully AGIS.  (*See, e.g.*, Ex. 22, PTX-326; Ex. 23, PTX-334.)  Life360 also purchased Google ad words as part of its publicity campaign.  (Ex. 24, PTX-407; Ex. 25, PTX-412; Ex. 26, PTX-413.)  Mr. Hulls had many exchanges on twitter with supporters whom he thanked for "helping [Life360] take down our troll" by spreading the word about Life360's anti-AGIS websites.  (Ex. 27, PTX-438.)  He also publicly promoted a link to the "malcolmbeyer.com" website, which included Mr. Beyer's email address and home phone number for harassment purposes.  (Ex. 25, PTX-412; Ex. 23, PTX-334.)

Life360 didn't stop there.  Life360 also threatened to slander AGIS's counsel by purchasing the websites "kenyontrolls.com," (Ex. 28, PTX-416), "markhannemann.com," (Ex. 29, PTX-420), "markahannemann.com," (Ex. 30, PTX-419), "thomasmakin.com," (Ex. 31, PTX-424), "anneeliseli.com," (Ex. 32, PTX-415), and "roseprey.com," (Ex. 33, PTX-421).  Mr. Hulls informed AGIS's counsel that he was "willing to give [AGIS's counsel] a graceful exit."  (Ex. 34, PTX-323.)  Mr. Hulls also stated that if AGIS did not drop its case, he would escalate the P.R. campaign with "many more things planned" including, presumably, disparaging websites against Kenyon & Kenyon and its attorneys.  (*See, e.g.*, Ex. 34, PTX-323; *see also* Ex. 28, PTX-

---

further infringement," and that "[w]e look forward to hearing from you by noon this Friday, May 16."  (Ex. 19, PTX-162.)  The letter did not demand that Life360 pay an unstated amount of money within three days or shut down its service; it merely asked Life360 to respond to the letter, *i.e.*, by indicating whether it was willing to discuss a royalty-bearing license, within three days.  Life360 also ignores its intemperate and provocative response, entitled "Dear Piece of Shit" (D.E. 1, ¶ 11), which made it crystal clear that Life360 was not going to discuss a license, and which prompted AGIS's legitimate and reasonable concern that Life360 planned to file a declaratory judgment suit in California.  (*See* D.E. 23; *see also Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 4:15-cv-00151, D.E. 1 (N.D. Cal. Jan. 12, 2015) (attached as Ex. 20).)

416; Ex. 29, PTX-420.)  It is clear that Life360's vexatious conduct and bad faith tactics were meant to intimidate AGIS, its trial witnesses, and its attorneys, into dropping the case.

Life360's disrespectful conduct should not be countenanced, much less rewarded by an award of attorney fees, merely because Life360 managed to prevail at trial.  This is especially so given that Life360's smear campaign repeatedly asserted that AGIS's patents are broad and invalid (*e.g.*, Ex. 36, PTX-409 at AGIS 1378; Ex. 21, PTX-328; Ex. 37, PTX-358 at AGIS 1388; Ex. 38, PTX-405), yet Life360 never challenged the validity of the patents in the patent office, and it failed to persuade the jury that any of the claims are invalid.  (D.E. 167 at 3.)

Life360's victory at trial was solely on the issue of infringement, where the jury had to decide two key disputed fact issues—whether there was a predicate act of direct infringement by end users because a single entity carried out all of the method steps, and whether Life360 had the state of mind required to indirectly infringe.  And the jury had to decide these issues against the backdrop of two legal principles that changed in AGIS's favor only after trial.[14]

In sum, this was a close case that the Court properly sent to the jury and that could have gone either way.  The jury rejected Life360's invalidity challenges, and AGIS's infringement contentions were more than objectively reasonable—and would have been even stronger had the trial taken place a few months later, after the law changed.  This case is not exceptional, and there is no basis for an award of attorney fees, especially in view of Life360's ugly, retaliatory conduct in response to AGIS's good faith and reasonable effort to enforce its statutory rights.

### III.   CONCLUSION

For the reasons set forth above, considering the totality of the circumstances, AGIS submits that the Court should deny Life360's motion for an award of attorney fees and non-taxable expenses in its entirety.

---

[14] First, the Federal Circuit relaxed the standard for infringement in *Akamai* on August 13, 2015. Second, the Supreme Court eliminated the basis for Life360's defense that it did not induce infringement because it believed AGIS's patents are invalid in *Commil* on May 26, 2015.

Respectfully submitted,

Dated: August 31, 2015                 By:  */s/* Mark A. Hannemann

                                       _____
                                       George E. Badenoch*
                                       New York Bar No. 1165323
                                       E-mail: gbadenoch@kenyon.com
                                       Mark A. Hannemann*
                                       New York Bar No. 2770709
                                       E-mail: mhannemann@kenyon.com
                                       Thomas Makin*
                                       New York Bar No. 3953841
                                       E-mail: tmakin@kenyon.com
                                       Rose Cordero Prey*
                                       New York Bar No. 4326591
                                       E-mail: rcordero@kenyon.com
                                       Vincent Rubino, III*
                                       New York Bar No. 4557435
                                       E-mail: vrubino@kenyon.com
                                       **KENYON & KENYON LLP**
                                       One Broadway
                                       New York, NY 10004-1007
                                       Telephone: (212) 425-7200
                                       Facsimile: (212) 425-5288

                                       *\* admitted pro hac vice*

                                       and

                                       Ury Fischer
                                       Florida Bar No. 048534
                                       E-mail: ufischer@lottfischer.com
                                       Adam Diamond
                                       Florida Bar No. 091008
                                       E-mail: adiamond@lottfischer.com
                                       **LOTT & FISCHER, PL**
                                       355 Alhambra Circle, Suite 1100
                                       Coral Gables, FL 33134
                                       Telephone: (305) 448-7089
                                       Facsimile: (305) 446-6191

                                       *Attorneys for Plaintiff*
                                       *Advanced Ground Information Systems, Inc.*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 31, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

s/ Adam Diamond<br>Adam Diamond

## SERVICE LIST
### *Advanced Ground Information Systems, Inc. v. Life360, Inc.*
### United States District Court, Southern District of Florida
### CASE NO. 9:14-CV-80651-DMM

Service via CM/ECF generated Notices of Electronic Filing:

| | |
|---|---|
| **SHUTTS & BOWEN, LLP**<br>Eric C. Christu<br>Florida Bar No. 434647<br>E-mail: echristu@shutts.com<br>Daniel Barsky<br>Florida Bar No. 25713<br>E-mail: dbarsky@shutts.com<br>525 Okeechobee Blvd., Suite 1100<br>West Palm Beach, FL  33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530 | |
| **THE WEBB LAW FIRM**<br>Kent E. Baldauf, Jr.*<br>E-mail:  kbaldaufjr@webblaw.com<br>Bryan P. Clark*<br>E-mail:  bclark@webblaw.com<br>Cecilia R. Dickson*<br>E-mail:  cdickson@webblaw.com<br>James L. Bosco, Jr.**<br>E-mail:  jbosco@webblaw.com<br>Thomas C. Wolski *<br>E-mail:  twolski@webblaw.com<br>One Gateway Center<br>420 Ft. Duquesne Blvd.<br>Suite 1200<br>Pittsburgh, PA  15222<br>Telephone:  (412) 471-8815<br>***Attorneys for Defendant Life360, Inc.*** | |

22