IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ADVANCED GROUND INFORMATION SYSTEMS, INC., | CIVIL ACTION NO. 9:14-cv-80651-DMM |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| LIFE360, INC., | |
| Defendant. | |

**DEFENDANT LIFE360'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES**

I.     **INTRODUCTION**

As explained in Life360's opening brief, AGIS aggressively initiated and maintained this lawsuit with no consideration for the consequences of its actions. Life360 is a young start-up company that was forced to make the difficult decision between defending itself from what it viewed from the outset as a baseless lawsuit and paying off AGIS to avoid litigation. Life360 made the right decision. As a matter of public policy, companies like Life360 should be encouraged to invest their funds in innovation and job creation, not settling lawsuits to avoid the high costs of litigation. The public outcry over AGIS's conduct in this case highlights the importance of holding AGIS accountable for its actions.[1]

In opposing Life360's motion for attorney's fees, AGIS makes numerous arguments to justify its actions. However, when placed under even the lightest scrutiny, these alleged justifications do not validate its conduct or otherwise rebut Life360's argument that this case stands out from the others and therefore qualifies as "exceptional" under controlling Supreme Court precedent. While an award of fees will not reimburse Life360 for its time and effort spent on this case, § 285 provides this Court with the discretion to consider "the totality of the circumstances" in order "to advance considerations of compensation and deterrence." *See Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014); *see also id.* at 1758 (rejecting a "clear and convincing" standard for exceptionality determinations in favor of a "simple discretionary inquiry"). As explained below and in Life360's opening brief, the record supports a finding of exceptionality. AGIS should not be allowed to simply walk away from its harmful actions without repercussions.

---

[1]   *See, e.g.,* "How Life360 Won Its Patent War," http://arstechnica.com/tech-policy/2015/03/how-life360-won-its-patent-war/ (including numerous public comments commending Life360 for defending itself)

**II.     ARGUMENT**

   **A.     AGIS's "Single User" Theory**

AGIS first contends that its "single user" theory was objectively reasonable. D.E. 196 ("Pl.'s Opp.") at 4-9.  In doing so, AGIS generalizes the claim limitations and refers mainly to the active verbs that introduce the claimed steps: "providing," "storing," "displaying," and "transmitting." *Id*. at 4.  This is not responsive to Life360's argument.  The key point raised in Life360's opening brief (and throughout the litigation) is that the claims require actions to take place on "<u>each</u>" phone in a given circle.[2]  Life360's opening brief addressed why AGIS's position on this point is without merit. *See* D.E. 190 at 5-13.  The most significant example is AGIS's argument in opposition to summary judgment that the claimed method steps are performed **"automatically"** as a result of sending an invitation.  *See* D.E. 109 at 6-7.  As discussed in Life360's opening brief, there was never any support for this position.  In its opposition, AGIS disposes of this issue in three sentences:

> Life360 ignores at least the case where the invitee already has the Life360 software installed and, upon clicking "accept," receives the software components (a database and code) to enable communication with that particular circle. (Ex. 7, 3/10/15 Trial Tr. at 90:17–91:7.) In this scenario, the "downloading" and "storing" is automatically achieved upon clicking the "accept" link in the invitation to join a new circle. AGIS never argued that anything else was "automatic" as a result of the link.

Pl.'s Opp. at 7.

---

[2]     Claim 7 of the '728 Patent and claim 1 of the '681 Patent require "providing…calling software <u>in each cellular phone</u>" and "providing and storing [telephone numbers] <u>in each of the participant cellular phones</u>".  Claim 1 of the '954 Patent requires "providing <u>each cellular/PDA/GPS phone</u> with a software application program and database" and "displaying <u>on each cell phone display</u> one or more symbols representing the users in the network." Claims 1 and 4 of the '441 Patent require "displaying, on the touch display screen <u>of each communication device</u> . . . at least the identity data and the location data." Likewise, claim 4 of the '441 Patent requires "<u>each network participant </u>automatically transmitting . . . at least its identity and location data."

2

This statement does not withstand scrutiny. For example, AGIS acknowledges that an invitation must at least be "accepted" by the invitee before any software can be transferred to the invitee's phone. This undercuts AGIS's position in the litigation that the administrator user (*i.e.*, the one sending the invitation) is the one who "provided" the software and database on the invitee's phone. Having to affirmatively accept an invitation to join a circle (and receive "a database and code," in AGIS's words), is remarkably different than automatically receiving the database and code from the one sending the invitation.

AGIS also makes much of the fact that the claim language says "providing" software rather than "downloading" software. D.E. 196 at 5-6. But it was AGIS's position all along that the "providing" step is met by a user "downloading" the Life360 app on his or her smartphone. *See, e.g.,* D.E. 190, Ex. 7 at ¶¶ 72-73, 88-89, 105-106 (AGIS's expert report stating that the "providing" step is met "when [a Life360 user] downloads and installs the Life 360 app on a smartphone."); D.E. 190, Ex. 7 at '728 patent charts (Ex. A) p. 10 (AGIS's infringement contentions stating, with respect to the "providing" software limitation, that "[a] user performs this step by downloading and installing the [Life360 app] on his/her smartphone"). Given that it was AGIS's litigation position that "providing" software occurs when the Life360 app is downloaded and installed, AGIS should not now be permitted to argue that "providing" software can occur where some unspecified "code" is transferred to an invitee who has already downloaded and installed the Life360 app.

Finally, AGIS's argument is premised on a logical fallacy. It argues that Life360's motion should be denied because Life360 lost its motion for summary judgment of non-infringement. But Life360's argument for attorney's fees is, in part, that AGIS survived summary judgment by misstating the facts.

## B. AGIS's "Public Network" and "Common Interest Network" Arguments are Indefensible

AGIS contends that its continued assertion of claim 1 of the '954 Patent and claim 4 of the '441 Patent was objectively reasonable. Pl.'s Opp. at 9-12. The primary reason for this, AGIS asserts, is that Life360 "never sought summary judgment or JMOL on either of these grounds." *Id.* at 9. This misses the point. First, Life360's decision to not move for summary judgment on these points was driven largely by the fact that any successful ruling would not have been case dispositive, whereas the issue Life360 did move on would have been.[3] Second, AGIS again misrepresents the facts because Life360 did move for judgment as a matter of law on this issue. D.E. 153, at 12-13 (Life360's motion for Judgment as a Matter of Law presenting non-infringement arguments on both the "public network" and "common interest network" limitations).

The remainder of AGIS's arguments on this point are equally unavailing. The most relevant fact remains uncontested: all of Life360's circles are invitation-only and formed through the same basic invitation process. D.E. 190, at Ex. 17, ¶150-155; *id.* at Ex. 12, 117:5-18 (AGIS's expert agreeing that Life360 circles require invitations to join). The argument that a network is "public" because an administrator can invite any member of the public he or she wishes defies common sense, particularly when the claim expressly contrasts the "public" network with one that is "private."[4] In view of this Court's ruling that the construction for "private network" "differentiates" it from a

---

[3] Life360 should not be prejudiced for streamlining the issues for this Court, especially given the large number of claims asserted by AGIS.

[4] AGIS's trial testimony and the literature for its own product recognized the common sense distinction between a "public" and "private" network and contradicted AGIS's infringement position. Ex. 13, at 29:24-30:2 (CEO of AGIS Malcolm Beyer); Ex. 14, at 72:19-73:5 (AGIS's claim construction expert); Ex. 15, at 168:10-15 (AGIS President Sandel Blackwell); Trial Ex. DTX-534 (HoundDog website); Ex. 9, 25:3-26:9 (AGIS President Sandel Blackwell).

"public network," AGIS's argument simply does not hold water. *See* D.E. 77, at 36. While it is true that Life360 moved for an even narrower construction of "private network," Life360's construction only sought to narrow the definition of "private network" based on the specific information required to join the private network described in the specification (*i.e.*, a password or phone number). The Court's rejection of this portion of Life360's construction cannot reasonably be read to blur the line between a public and private network in the manner AGIS argues. AGIS's focus on the construction for "private network" is also misplaced—the construction that AGIS ignored in continuing to prosecute its infringement case is not the Court's construction of "private network," but rather the construction AGIS <u>agreed on</u> for "public network." D.E. 190 at 13-14.

AGIS's explanation of why the "common interest network" limitation was reasonably asserted and maintained is equally unavailing. Like with "private network," AGIS focuses on the fact that the Court did not adopt Life360's <u>entire</u> proposed construction, ignoring that the Court adopted the <u>majority</u> of Life360's proposal: "a network in which the inclusion of participants is based on a shared interest among the participants." D.E. 77 at 36. Again, it remains <u>undisputed</u> that the "inclusion of participants" in a Life360 circle happens on only one way: <u>by invitation to a particular user</u>. There is no way for users to connect based on a shared interest because an invitation must be sent to a specific person and accepted.

AGIS should have withdrawn its contentions regarding claim 1 of the '954 Patent and claim 4 of the '441 Patent after this Court's claim construction ruling. *See, e.g., Taurus IP, LLC v. Daimler Chrysler Corp.*, 2013 WL 4034384, *13-*16 (Fed. Cir. Aug. 9, 2013) (affirming award of attorney's fees for frivolous infringement claim in view of an adverse claim construction).

      C.      **AGIS Did Litigate in Bad Faith**

Life360 opening brief presented several examples of AGIS's conduct that add to the overall "totality of circumstances" relevant to determining exceptionality.

### 1. AGIS's "joint direct" infringement theory

AGIS's argument that it did not argue a "joint direct" theory of infringement is incorrect. AGIS explicitly made such an argument, first in opposition to summary judgment and then again at trial. For example, AGIS argued that all users in a circle jointly and directly infringe under its "unincorporated association" theory raised for the first time at summary judgment. D.E. 109 at 13. AGIS then argued this again at trial. 3/10/15, Trial Tr., at 150:1-5 ("There is no argument, whatsoever at all, that if you look at the two users as an entity, all of the steps are performed"); D.E. 190, Ex. 11, at 27 ("Now, if a single entity can have two users, why is Life360 spending all of its time talking about whether a single user does everything?").

### 2. Contributory infringement

Contributory infringement has two *mens rea* requirements: (1) knowledge of the patent; and (2) knowledge that the product is used for infringement. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).[5] While this may not be the same "intent" to infringe required by § 271(b), it is a culpable, state-of-mind requirement. *See Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (discussing the history of "§ 271(c)'s intent requirement"). AGIS, however, sought to evade the requirement of knowledge of the infringement (and not just the patent) when it argued that contributory infringement has two requirements: "a knowledge of the patent element and the other element that Your Honor pointed out a few minutes ago in terms of not having substantial non-infringing uses."

---

[5] The cases AGIS cites are in agreement. *See, e.g., Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, n.4 (Fed. Cir. 1990) (clarifying that § 271(c) requires "not only knowledge that the component was especially made or adapted for a particular use but also knowledge of the patent which proscribed that use.")

3.  The "HoundDog" mobile app

AGIS asks this Court to believe that the convenient timing of its release of the HoundDog mobile application and website is a mere coincidence. Even though this "app" was apparently being developed since 2005, AGIS registered the domain hounddogapp.com <u>during the litigation</u> on August 14, 2014 and the app appeared on the Google Play store <u>during trial</u> (and well after discovery closed) on March 12, 2015.[6] And, while AGIS states that the companies were not in competition, AGIS maintained that it was being irreparably harmed and was entitled to injunctive relief.

4.  Misrepresentations about practicing the patent claims

Finally, the deposition responses of Malcolm Beyer confirming that the AGIS product did not practice all of the asserted patent claims were unequivocal. While AGIS claims that Mr. Beyer misspoke or was mistaken, AGIS had an opportunity, and duty, to correct the record on redirect and again when approving the deposition transcript, but did not do so. *See Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 532 (S.D. Fla. 2009) (allowing substantive changes to be made to a deposition transcript via an errata sheet); Fed. R. Civ. P. 30(e) (allowing deponent 30 days to review transcript and make changes in form or substance).

**D.   The Law Did Not Change in AGIS's Favor**

AGIS's opposition brief makes generalized statements about the law changing in AGIS's favor after the conclusion of the case. Any impact of this new case law, if it is even relevant to the determining whether AGIS's actual litigation positions were reasonable at the time they were made, is overstated.

The two issues that AGIS identifies are divided infringement and specific intent to induce infringement. On the issue of divided infringement, the Federal Circuit indeed revisited its *Akamai*

---

[6] Ex. 1 (WHOIS records for hounddogapp.com); HoundDog – Android App, https://play.google.com/store/apps/details?id=com.agis.android.apps.lifering.

holding and found infringement on the facts of that case. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, Nos. 2009-1374, _ F.3d _, 2015 U.S. App. LEXIS 14175, at *_ (Fed. Cir. Aug. 13, 2015). Notably, the Court found that the record supported a finding that *Akamai* performed certain steps and had "direction and control" over the performance of another step by its users who were contractually obligated to perform this step in order to use Limelight's service. This conduct was found to fit within existing Federal Circuit precedent. *Akamai*, at *5 (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007)). Moreover, AGIS refers to "joint enterprise liability" but leaves out all four requirements of such liability: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* at *5-6.

On the issue of specific intent, AGIS contends that the Supreme Court's decision in *Commil USA, LLC v. Cisco Sys., Inc.* would have strengthened its case. 135 S. Ct. 1920 (2015). This is not true because *Commil* only held that a belief of invalidity does not negate the specific intent required for induced infringement. *Id.,* at 1928-30. *Commil* left intact the argument that a belief of non-infringement can negate the specific intent requirement.

E. **The Fees Sought by Life360 are Neither Unauthorized Nor Excessive**

Life360 asks for its fees for at least the period beginning with the claim construction order on November 21, 2014 and onward. This date coincides with the day of the claim construction order when the system claims were held indefinite leaving only the method claims, and the Court construed key terms of the '954 and '441 Patents. Should the Court make a determination as to exceptionality, the total amount of reimbursement owed to Life360 can be calculated from the submitted invoices.

8

AGIS's newfound contention with Life360's compliance with Local Rule 7.3(a) is inappropriate and untimely. Under the Local Rules, Life360 provided AGIS with a copy of its brief and the requisite invoices on June 11, 2015, thirty (30) days prior to filing them with this Court. AGIS then provided a fifteen (15) page, single-spaced letter to present its objections. *See* Ex. 2 (letter from Rose Prey to Kent Baldauf, Jr.). This objection letter did not contest the form of Life360's invoices, or the fact that a formal fee agreement was not submitted. *Id.* The invoices submitted are the bills that were submitted to Life360—any "discounts, caps, reductions, or other fee arrangements" would be reflected in those totals. There was no "applicable fee agreement" to be disclosed because, as evident from the invoices and declaration submitted, Life360's lawyers billed by the hour. The invoices had to be redacted as they contained privileged information, which was made known to AGIS. Life360 offered to provide unredacted invoices to the Court for *in camera* inspection and to opposing counsel subject to an agreement concerning redaction of work product and/or privileged information. D.E. 191 at ¶ 7. AGIS made no request for this information prior to filing its opposition even though, because of extensions granted by Life360, AGIS's opposition came more than 70 days after receiving Life360's draft motion. Notably, AGIS does not contend that the total amount of the attorney's fees sought by Life360 is unreasonable.[7]

AGIS also contends that the Federal Circuit "eliminated" "any notion that section 285 permits an award of expert fees." Pl.'s Opp. at 16 (citing *Amsted Industries v. Buckeye Steel Castings Co.*, 23 F. 3d 374 (Fed. Cir. 1994)). But *Amsted Industries* did not purport to overrule existing precedent that provides courts with the discretion to award expert fees along with attorney's

---

[7] In fact, the total amount of Life360's invoices are a fraction of the average cost of a patent trial, especially considering the number of patents, claims, and discreet issues. *See, e.g.,* http://www.ipwatchdog.com/2013/02/05/managing-costs-of-patent-litigation/id=34808/ (estimating $2.8 million through final disposition).

9

fees, and such discretion remains with the Court. In this instance, Life360 asks this Court to exercise its discretion in awarding expert witness fees.

### F. Life360's Conduct is Irrelevant

In an attempt to excuse its own bad acts, AGIS embarks on a detour of Life360's public statements. However, none of the acts it identifies is *litigation* conduct, much less *litigation misconduct*, and is therefore irrelevant to the analysis. Indeed, AGIS only cites to *Power Mosfet Technologies, LLC v. Siemens AG* in support of its argument, which affirmed a denial of attorney's fees where both parties engaged in *litigation* misconduct via "withholding of documents and other discovery abuses." 378 F. 3d 1396, 1415 (Fed. Cir. 2004).

### III. CONCLUSION

For the foregoing reasons and the reasons discussed in its opening brief, Life360 respectfully requests that the Court declare this case exceptional and require AGIS to reimburse it for its attorneys' fees, expert fees, and non-taxable expenses incurred in connection with this case.

Dated: September 25, 2015

Respectfully Submitted,

/s/ Daniel J. Barsky
Kent E. Baldauf, Jr. (PA I.D. No.: 70793)
kbaldaufjr@webblaw.com
Cecilia R. Dickson (PA I.D. No.: 89348)
cdickson@webblaw.com
Bryan P. Clark (PA I.D. No.: 205708)
bclark@webblaw.com
James J. Bosco, Jr. (PA I.D. No.: 203896)
jbosco@webblaw.com
Christian D. Ehret (PA I.D. No.: 311984)
cehret@webblaw.com

The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, Pennsylvania
Telephone: (412) 471-8815
Facsimile: (412) 471-4049

Eric C. Christu (Fla. Bar No. 434647)
echristu@shutts.com
Daniel J. Barsky (Fla. Bar No. 25713)
dbarsky@shutts.com
Shutts & Bowen LLP
1100 CityPlace Tower
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Telephone: (661) 650-8518
Facsimile: (561) 822.5527

*Counsel for Defendant LIFE360, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 25th day of September, I served the foregoing document via

CM/ECF, upon the following:

Ury Fischer, Esq.
ufischer@lottfischer.com
Adam Diamond, Esq.
adiamond@lottfischer.com
Lott & Fischer, PL
355 Alhambra Circle
Suite 1100
Coral Gables, FL 33134
305-448-7089(ph/305-446-6191(fax)

Anne E. Li, Esq.
ali@kenyon.com
Mark Hannemann, Esq.
mhannemann@kenyon.com
Matthew C. Berkowitz, Esq.
mberkowitz@kenyon.com
Thomas R. Makin, Esq.
tmakin@kenyon.com
Vincent J. Rubino, III, Esq.
vrubino@kenyon.com
George E. Badenoch, Esq.
gbadenoch@kenyon.com
Corey J. Betker, Esq.
cbetker@kenyon.com
Alessandra Carcaterra, Esq.
acarcaterra@kenyon.com
Kenyon & Kenyon, LLP
One Broadway
New York, NY 10004-1007
212-425-7200 (ph) / 212-425-5288

                                                  /s/  Daniel J. Barsky
                                                  Counsel for Defendant
                                                  Life360, Inc.